DANIEL, J.
The only question brought before the Court for its decision in this case, is, whether the claim of S. & J. Lambert against the representatives of Dishman has been paid; and its solution depends on the extent of power with which an attorney at law is clothed, who, in the ordinary course, is entrusted by a creditor with a bond, note or other evidence of debt, for suit and collection. Practitioners of the law in this country are generally regarded by the Courts as vested with a larger authority in the control and disposition of demands placed in their hands for collection, than has been usually attributed by the common law to an attorney at law in England. Here the characters of attorney and barrister or counsellor at law, are in most instances blended, and the powers pertaining to this double capacity, are held to be of a wider scope than those belonging to the office of an attorney merely.
*In some of our sister States the rela *62 tion of client and attorney has been held to confer upon the latter the authority even to compromise, compound or commute demands of the former confided to him for collection. The general doctrine, however, so far as I have had it in my power to collect it from a review of the decisions, is, that the attorney has no right to commute the debt of his client, to release the person of the debtor when in prison by virtue of a ca. sa., or to enter a retraxit -in a suit, to execute a release, or to do any other act which destroys the cause of .action without receiving payment. But, on the other hand, that he has an extensive control over the remedy, and is vested with a liberal discretion in the use of the means he may deem best adapted to procuring the payment of his client’s debt.
He may accept payment of the debtor, if voluntarily made to him, at any time whilst his powers continue; or he may take such steps as he may think best calculated to procure payment. In the honest exercise of a sound discretion, unless otherwise instructed by his client, he may delay bringing suit, he may consent to continuances of it, after it is brought, during its progress to judgment, and after jugment he may postpone issuing execution; he may elect whether to take one against the person or the lands or goods of the debtor; and if he issues one against the lands’ or goods, he may direct on what property of the debtor it shall be levied; and after levy he may control. the proceedings of the sheriff or other officer having charge of the execution, and may from time to time postpone a sale of the property levied upon.
It has been decided by the Supreme court of the United States, in the case of the Union Bank of Georgetown, v. Geary, S Peters’ R. 99, that an agreement made by an attorney, in whose hands a promissory note was placed for collection, with an endorser, that if the latter would confess judgment and not dispute *his liability, the attorney would immediately proceed to make the money by execution against the drawer, was within the general scope of the attorney’s powers, and binding upon the creditor. And in Silvis v. Ely, 3 Watts & Serg. 420, it was held to be within the power and authority of an attorney to stay the execution upon a judgment in consideration of the promise of a third person to pay the debt; and that such promise was' binding though not made to the plaintiff nor assented to by him at the time.
The subject has been before this Court in several cases. In Hudson v. Johnson, 1 Wash. 10, and Branch v. Burnley, 1 Call 147, it was decided that, in general, payment to an attorney at law of a debt which he is employed to recover, is good on the custom of the country, particularly if he have possession of the evidence of debt. In the case of Smock v. Dade, 5 Rand. 639, it is asserted by the General court as well settled doctrine, that whilst the authority of an attorney does not extend to the commutation of a debt without the client’s assent, his receipt of actual payment is complete protection to the debtor. In that .case the attorney received a portion of the debt in money, a draft at ten days sight, and a bond at four months; and the receipt given by the attorney stipulates that the draft and bond when paid should be, together with the sum paid in money, in full of the executions of the creditor against the debtor. The amount of the draft was paid to the attorney, but there was no evidence to shew that he had ever realized any thing on the bond. In this state of things the Court held that the amount produced by the draft constituted to that extent a good payment, but that the creditor ought not to be charged with the bond; that the Court below ought not therefore to quash an execution which the creditor had issued to-enforce collection, “although it would have been entirely proper if *such motion had been submitted, for the Court to have entered satisfaction” to the extent of the payment made in money and the amount received on the draft.
The decision in Smock v. Dade has been approved by this Court in the case of Wilkinson v. Holloway, 7 Leigh 277. In the last mentioned case it was decided that it was not competent for an attorney employed to. collect a debt, to discount from it a debt he himself owes the debtor, or to take as an absolute payment or satisfaction the debtor’s assignment of a bond of a third person. But the Court at the same time recognize it as well settled doctrine that an attorney at law who has possession of the evidence of debt, or has obtained a judgment for his client, may receive from the debtor payment of the debt; and that the creditor having confided in him, not only to sue, but also to collect and receive the money, is. bound by the payment.
I do not see how we can approve the decision in Smock v. Dade, in regard to so much .of the creditor’s demand as was held to be paid by the proceeds of the draft, and yet consistently decide that the debt in this case has not been satisfied by Brooke’s receipt in actual money of the amount of Coakley’s. note.
It is true there is a difference in the wording of the written receipts given by the attorneys in the two cases, but I cannot perceive any such marked variance in their phraseology as would justify us in saying that the coming of the proceeds of the collateral debts into the hands of the attorney should in one case constitute a payment; but that, in the other, payment could not be predicated of the transaction till such proceeds were handed over by the attorney to his client, the original creditor.
The receipts vary from each other in two-particulars. In Stock v. Dade the signature of the attorney’s name is followed by the , addition of the word “attorney.” In *the case before us there is no such addition. The receipt in Stock v. Dade recites that the draft and bond are, when paid, to be together with the money paid down, “in full of the executions.” *63 Here the attorney stipulates that after pay- ’ ing himself his fee and commission, he is ; to apply the balance of the proceeds of Coakley’s note to the credit of S. & J. ¡ Lambert’s judgment. I do not think that Banks by affixing the word attorney to his | signature to the receipt in Smock v. Dade, j gave any plainer indication that in makng the arrangement he was acting as the attorney of the original creditor, than he would have done by simply signing his name without the addition. The character in which he treated was to be gathered from the transaction. He was known to the debtor to be the attorney of the creditor, and the debtor in making the arrangement believed he was negotiating and intended to negotiate with one who had a right to receive the proceeds of the draft and bond when collected, in full of the executions. So in this case the relation in which Brooke stood to the Lamberts was well known to the executors of Dishman. The addition of attorney to his signature upon executing the receipt would not have made it more manifest.
And I cannot perceive how any more extensive control over the rights and interests of his client is asserted by an attorney in the undertaking that certain collateral securities placed in his hands for collection shall, when paid, be applied as a credit to his client’s demand, than in undertaking that, when paid, the proceeds shall be in full of the original debt. The relations of the several parties, each to the other and to the subject matter of the contract, and the purposes sought to be accomplished by the attorneys and the debtors by the arrangements made between them, in the two cases, were essentially the same.
*There is nothing in the receipt given by Brooke, nothing in the intrinsic character of the transactions, nothing in any of the evidences existing in the case, upon which to base the belief, that the executors of Dishman, in placing the claims in the hands of Brooke to be collected and applied to the credit of the debt, or that Brooke in accepting them with the agreement to collect and so apply them, designed any fraud on the Lamberts. There is nothing to shew that the transaction did not grow out of an honest desire and purpose on the part of all the parties, to provide a new security and furnish a new, safe and speedy means of satisfying the debt.
Any argument, by way of analogy, to be drawn from the iaw regulating the property in a fund which has come into the hands of one holding towards it the double relation of executor and legatee, or of executor and guardian, furnishes, I think, no aid to the pretensions of the appellees. In such cases, the party coming into the possession of the fund, is considered as taking possession in the first instance, in the character of executor, because he cannot in the first instance, according to law, take possession in any other character, and he will be presumed to have possessed himself rightfully, and not wrongfully. Being originally so possessed, he will be presumed to continue to hold in the same character until some act is done, indicating decisively a purpose to hold in his other character. Generally, in such cases, there are others having claims upon the fund, whose rights and interests are to be adjusted and settled before the executor can legally elect to hold it in his other character of legatee or guardian. Here by the very terms of the agreement, the fund, when received, was to be applied as a credit to the claim of the Lamberts. There were no rights or interests of other persons to be looked to and adjusted before the attorney might lawfully hold the fund as the money of his original 'x'clients. Lven in the case of one combining the two offices of executor and guardian, very slight acts are often regarded by the Courts, as legal indications of an election to hold the fund in the character of guardian: and I know of no rule of law that confines the evidences of such election to acts or declarations cotemporaneous with, or subsequent to the receipt of the fund. If an executor upon receiving a collateral security to be collected and applied to the discharge of a debt due to his testator, should set forth in a written receipt, or otherwise declare, that all debts were now paid and the estate fully distributed, with the exception of the fund about to be collected, and that he designed upon receiving it, to hold the balance after deducting his commission, as the guardian of a ward, I am not prepared to say that such a receipt accompanied by proof that he had really qualified as guardian, and that his declarations with regard to the situation of the estate were true, would not amount, without any further act, other than the subsequent receipt of the fund, to an election, so as to charge him and his sureties with it in his character of guardian. If then, the analogies supposed to exist between this and the cases of the double fiduciary relations above referred to, can be properly consulted as furnishing any guide to the solution of the question under discussion, it seems to me that they tend strongly to support, rather than to defeat the views of the appellant.
It is urged, that if an attorney, entrusted with the collection of a debt, may thus treat with the debtor, and accept from him claims on third persons to be collected, and credited to the debt, he has it in his power to subject the creditor to several settlements with him, instead of one. The fact that a creditor may be thus occasionally subjected to inconvenience, furnishes, it seems to me, no argument against the legal existence of such a power: for the inconvenience is one which may *as well flow from direct payments to the attorney, as from payments effected indirectly through collateral securities ; and I presume it is well settled, that an attorney employed to collect a debt, is not limited to a receipt of the debt in one sum, but is fully empowered also to receive partial payments from time to time, till the debt is satisfied.
*64 It is also urged, that the executors had a right at any time previous to the collection of Coakley’s note, to withdraw it from the hands of the attorney; and that even after the collection, they had a right to revoke the directions given as to the application of the proceeds. Even if the first branch of the proposition were law, it would, by no means, follow that the second was also: for according to this hypothesis, so soon as the note was collected, it was converted into something belonging to the debtor, to wit, money, which the attorney had a right to receive in payment of his client’s demand, and which, by the express agreement between him and the executors, it was stipulated should be applied as a credit to said demand. But I do not think that either branch of the proposition is true. It is true, that this Court, in the case of Beers &c. v. Spooner, 9. Beigh 153, decided that a verbal direction given by a person having claims in the hands of an attorney for collection, to pay part of the money when collected, to another in satisfaction of a debt due to the latter from a third person, was revocable by the person giving the directions in his lifetime, or by his administrator after his death. Judge Tucker, however, in assigning the reasons of the Court, asserted principles, and approved of a decision furnishing ample authority for treating the transaction now under consideration, as an irrevocable dedication by the debtor of a fund for the payment of his debt. He says, “If Dudley (who was the person giving the directions) had been bound for the debt, and had directed Spooner (the attorney) to pay, there would *be more reason to regard the direction as irrevocable; particularly if Spooner had promised payment to the creditor. Then it would have resembled the case of Sharp-less v. Welsh, 4 Dali. R. 279. There the person giving the direction was the actual debtor, and the person receiving it, made an express promise to apply the fund as directed: here, the party was no debtor, and there was no promise. There, the Court held, that the debtor had made an appropriation of his funds to pay his debts to his creditors, which appropriation he could not revoke: here, he directs an appropriation, without consideration, to pay the debt of another, over which direction, he had a complete power of revocation, until the money was actually paid.”
Upon the authority of the principles declared in the , foregoing case, I think we would be weli justified in treating the transaction between White, the executor, and Brooke, as an irrevocable appropriation by the former of the fund arising from the collection of Coakley’s note to the payment of the demand due the Bamberts. The fact that Brooke would, in this aspect of the case, be acting as the attorney, agent or trustee of both creditor and debtor, in the prosecution and collection of the collateral security, does in no wise impair or detract from his original right and duty as attorney of the Bamberts, to receive money of the debtor, whenever realized, in payment of the demand, and grant him an acquittance for it. So viewing the case, were it not for the fact that the attorney stipulates in the receipt for deducting his fee and commissions from the fund, and the want of proof that such deduction was in truth ever made, it would seem to me that the collection of the money, its coming into the hands of one authorized to receive it, and the acquittance of the debtor, would be, necessarily, in legal contemplation, simultaneous acts, or rather one and the same act. Does the fact, that the attorney was only to apply the balance of the proceeds, *after deducting his fee and commissions, make the receipt of the money, so far as that balance is concerned, any less a payment of the debt. I think not. In the absence of any proof, as to what the fee and commissions were to be, the law adjusts them, and it was not necessary that the attorney should do any further act for the purpose of ascertaining what the balance would be. That is a matter of simple calculation, which could as well be done, (as it has been done,) by the officer of the law, as by the attorney. Upon the collection of the money, no one had to be further consulted as to its application. The rights of all who had ever had, or could have any interest in the fund, had been foredesigned and predetermined by the agreements between the parties having the lawful control over it.
A decision which would deny to such a transaction the force of a payment, would, it seems to me, be at war with the general practice and understanding of the country, and operate much to the detriment of creditors. An attorney is generally employed in the collection of a debt, not merely because of a belief oh the part of the creditor, in his skill, in the use of the ordinary legal means used for the enforcement of claims, and his promptness in paying over his collections, but also, because of his knowledge of the means, situation and relations of the debtor, and his talent in making and availing himself of such treaties and negotiations, as will be likely, without- in any measure jeopardizing the rights of the client, or resorting to legal coercion, to procure payment of the demand. To say that the receipt of money by the attorney in such a case, shall not constitute a payment by the debtor, is to strip the former of a power, which, to the honour of the profession, is very rarely used except to promote faithfully, the best interests of the client; and to subject an absent creditor who has not given special instructions to his attorney, to a very great disadvantage in a struggle for the effects *of a failing debtor. By the use of mild and persuasive means, having some regard to the feelings and credit of the debtor, by indulgences which do not jeopard the rights of the creditor, and the acceptance of securities which do not, until realized, discharge the demands, claims are now often made which would be lost, if the attorney was in all in *65 stances to be confined to the use of legal process, or the receipt of direct payments by the debtor.
I am therefore of opinion, that so much of the decree appealed from, as relates to the demand of the Lamt*erts, ought to be reversed with costs, and the enforcement of the same against the representatives of Dishman perpetually enjoined.
The other judges concurred in tfie opinion of Judge Daniel.
Decree reversed.