# CHARLESTON.

PECKS *v.* CHAMBERS.

February 23, 1875.

1875.
January Term.

1. The eighth section of chapter one hundred and thirty-nine of the code of 1868 of West Virginia confers upon courts of equity, jurisdiction and authority, to enforce judgment liens against the lands of the judgment debtor, at any time, without reference to whether the judgment debtor has personal property or estate out of which the judgment might be made by process of execution or not.

2. A court of equity, under the provisions of the thirtieth section of chapter one hundred and twenty-five of the said code, on overruling a demurrer to a bill, is not authorized to decree against the defendant demurring, for the relief prayed for in the bill until the court shall first have made a rule upon the defendant to answer the bill, fixing therein a day within, or on which, the answer shall be filed.

3. In decreeing the sale of realty to satisfy a judgment lien, the decree should give a day to the defendant to redeem the property by paying the amount charged upon it.

Appeal by William S. Chambers, the defendant below, from a decree of the circuit court of Logan county, rendered on the 2d day of May, 1372, in a suit therein pending, in favor of R. W. and J. E. Peck, plaintiffs.

The opinion of the Court contains a statement of the case.

The Hon.———————————————, judge of said circuit court, presided at the hearing below.

*James M. Laidley* for the appellant.

*James H. Ferguson* for the appellees.

HAYMOND, PRESIDENT:

The plaintiffs filed their bill in the circuit court of the county of Logan, in the early part of the year 1872 against the defendant to enforce the liens of two judgments alleged in the bill as having been confessed in the clerk's office of said court in actions of debt, in favor of the plaintiffs, in July, 1870, and April, 1871. Copies of the alleged judgments are filed with the bill. One of the judgments is for $574.30, which should bear interest from the 4th of July, 1870, and also the costs of suit. The other judgment is for $137.95, and the costs of recording the judgment. It is provided on the face of the first named judgment that no execution shall issue thereon for twelve months from its date—which was the 4th day of July, 1870. It is alleged in the bill and appears by the exhibits that on the 19th day of February, 1872, a writ of *fieri facias* was duly issued on the first named judgment returnable to the first Monday in April thereafter, and that on the day the writ so issued it went into the hands of the sheriff of said county, and that he, on the same day, endorsed on said writ in his official capacity the return of "no property found." On the 15th day of February, 1872, a writ of *fieri facias* was issued on the judgment secondly above named, also returnable on the first Monday of April thereafter, and went into the hands of the sheriff of said county; and afterwards on the said 19th day of February, 1872, the said sheriff, by his deputy, endorsed on the last named writ the return of "no property found." The bill also alleges, and it appears by the exhibits, that the said judgments, respectively, were duly entered in the Recorder's Office, on the judgment lien docket on the 11th day of October, 1870, and the 29th day of August, 1871. The bill also alleges that the said judgments, respectively, constitute liens on the lands of the defendant, and that the defendant is seized, in fee simple, of a tract of land situate on the east side of the Guyandotte river, containing twelve hundred acres, with the reservation of fifty

acres, more or less, of the same, and eighty trees, which appears by an official copy of the deed filed, marked G. The bill prays that said land, or so much thereof as may be necessary, be sold to pay said judgments, interest thereon and costs, &c. The said deed G describes the fifty acres, more or less, not conveyed thereby, but reserved, and also the eighty trees. The trees, however, are not described with much certainty.

This suit was commenced on the 20th day of February, 1872, and the bill was filed on the first Monday in March of the same year. The bill does not allege that the defendant has no personal property out of which the amount of plaintiff's said judgment debts can be made or that defendant is insolvent except as to his real estate.

On the 2d day of May, 1872, it appears that the cause was heard by the circuit court of said county upon the bill, exhibits, the proceedings at rules, and on the defendant's demurrer to the bill and that the court after argument of counsel overruled the demurrer: And thereupon the court immediately, and in the same decree, directed the defendant's land in the bill mentioned to be sold or so much as necessary for the purpose, to pay said judgments and costs of this suit and appointed a special commissioner to make the sale, one-third of the purchase money to be paid down and the residue in six and twelve months with interest from the day of sale, &c. And the commissioner is directed to report his proceedings to the court. At the conclusion of this decree and as part thereof are these words, viz: "The defendant has leave to file his answer within ninety days from this date, and the defendant gives notice of his intention to appeal." The decree directs that the land shall be advertised for sale at least thirty days prior to the sale and how the advertisement shall be made. No day is given the defendant by the decree in which to make payment of the judgments, &c. From the said decree of the circuit court the defendant has appealed to this Court and

he now here assigns the following as errors in the said decree for which the same should be reversed by this Court, viz :

"1. That the court erred in overruling the defendant's demurrer to the bill, because it is not sufficiently alleged or shown by the averments of the bill that the defendants had not personal effects out of which the judgments could be made by execution ; or in other words, that the plaintiff had not a complete remedy at law in the premises.

"2. It was error in the court to decree a sale of the land for the payment of the judgments upon overruling the defendant's demurrer without first giving a rule upon the defendant to answer the bill.

"3. It was error to decree the land to be sold without giving day to the defendant to redeem the land or pay the debt and costs."

The eighth section of chapter one hundred and thirty-nine of the Code of this State provides that "the lien of a judgment may always be enforced in a court of equity." The word "always," as employed in this section, may properly be construed to mean "at any time." I have quoted the whole of said eighth section, and it is materially different from the ninth section of chapter one hundred and eighty-six of the Code of Virginia of 1860 which was in force in this State when the Code of this State took effect. The said ninth section provides that "the lien of a judgment may always be enforced in a court of equity. If it appear to such court that the rents and profits of the real estate, subject to the lien, will not satisfy the judgment in five years, the court may decree the said estate, or any part thereof, to be sold, and the proceeds applied to the discharge of the judgment." The said eighth section of chapter one hundred and thirty-nine of the Code confers upon courts of equity jurisdiction and authority to enforce judgment liens at any time, without qualification. Whatever may have been the law and practice in relation to the right to

resort to the writ of *elegit* for the collection of judgment debts or the practice of courts of equity, in former times in relation to the enforcement of judgment liens by the sale of lands, it seems to me that the said eighth section of chapter one hundred and thirty-nine of the Code of this State confers upon courts of equity jurisdiction and authority to enforce judgment liens against the land of the judgment debtor at any time without reference to whether the judgment debtor has personal property or estate out of which the judgment might be made, by process of execution or not. From the broad, unqualified language employed by the Legislature in said eighth section I think that such was clearly the purpose and intention of the Legislature. It is true that, generally, a court of equity will not grant relief when the party invoking its aid has a complete remedy at law, but to this rule there are exceptions. It frequently happens that a party may resort to equity or to proceedings at law for redress or relief for the same cause of action. This is so where equity and a court of law each have jurisdiction of the subject. Whether a court of equity has or will take jurisdiction in any given case or subject, depends upon the principles governing courts of equity in such case or in relation to the subject, and also the legislation touching such case or subject. By the laws of this State judgments are expressly made liens upon the lands of the judgment debtor, but a judgment is not a lien upon the personal property or estate of the debtor. As we have seen the said eighth section of chapter one hundred and thirty-nine of the Code gives to courts of equity jurisdiction and authority to enforce such judgment liens at any time. The exercise of that jurisdiction is not made dependent upon the fact as to whether the amount of the judgment might or could be made by any other proceeding—for instance by a writ of *fieri facias.* A court of equity may, under the provisions of said eighth section, sell lands of the judgment debtor to pay his judgment debts whether the rents and profits of

the lands of the debtor will pay the debt in five years or not. This was not the case prior to the adoption of the Code of 1868 of this State. The policy and effect of the legislation of this State in relation to the enforcement of judgment liens, seems to be, to do away with restraints and restrictions in relation to the sale of realty for the payment of debts which formerly existed, and to give the judgment creditor access to the lands of his debtor, without unnecessary delay, for the satisfaction of his just demands, through the aid and instrumentality of courts of equity, should the creditor choose to invoke the aid of such courts before exhausting legal remedies to which he might resort. Whether this policy is wise or judicious is not for this Court to determine.

For these reasons the first error assigned is not well taken and must be overruled.

I proceed now to consider the *second* error assigned. The thirtieth section of chapter one hundred and twenty-five of the Code of 1868 provides that a plaintiff in equity may have any plea or demurrer set down to be argued, and if the same be overruled, no other plea or demurrer shall afterwards be received, but there shall be a rule upon the defendant to answer the bill; and if he fail to appear and answer the bill on the day specified in the order, the plaintiff shall be entitled to a decree against him for the relief prayed for therein. It is quite clear from this provision that where a demurrer to a bill is overruled the defendant is entitled to have a day given to answer. And the court on overruling the demurrer is not authorized to decree against the defendant demurring for the relief prayed for in the bill, until the court shall first have made a rule upon the defendant to answer the bill fixing a day within or on which the answer shall be filed. In this case the court on overruling the demurrer to the bill, instead of making a rule upon the defendant to answer at once proceeded to ascertain the amount of the plaintiff's debt and declared the debt to be a lien on the defendant's land in the bill mentioned

and decreed the land to be sold to pay the debt, interest and costs, and appointed a special commissioner to make the sale, &c. At the end of this decree the court gave the defendant leave to answer the bill within ninety days. The granting the leave to file an answer within ninety days, at the end of the decree of sale, is not a compliance with the law upon that subject. The rule to answer should first have been made upon the defendant, and if he failed to answer at the day fixed by the rule, then the court would have been authorized to proceed to decree the relief prayed but not before, without the consent of the defendant. *Sutton v. Gatewood and wife*, 6 Munf. 398 ; 2 Robinson (old) Practice, 302. The second error assigned is therefore well taken and is sustained.

It only remains to consider the *third* error assigned. In the case of *Kyles v. Tait's Admr.*, 6 Gratt, 44, it was decided that "upon a decree to enforce the lien of a vendor for unpaid purchase money, the decree should give a day to the defendants to redeem the property, by paying up the amount charged upon it." In that case Judge Allen delivered the opinion of the court, and in the opinion he says : "But the court is of opinion, that in the details of said decree there was error in this, that said decree gives no day to the appellants to redeem the property, by paying up the amount charged upon it." If it is error in decreeing the sale of lands for the payment of purchase money which constitutes a lien thereon, to fail to give in the decree of sale a day to the defendant to redeem the property by paying up the amount charged upon it, I am unable to see why it is not error for the court in decreeing a sale of land to pay a judgment lien, to fail to give in the decree a day to the defendant to redeem the land by paying up the amount charged upon it. I am not disposed to controvert the correctness of the decision in 6 Gratt., 44, in this case ; but feel disposed to apply and adopt it, as I think there should be uniformity in the practice, in this respect, in cases similar in principle.

For the foregoing reasons, the decree of the circuit court of Logan county, rendered in this cause on the 2nd day of May, 1872, must be reversed with costs to the appellant. And this Court proceeding to render such decree as said circuit court should have rendered in the cause—it is adjudged, ordered and decreed that the demurrer filed in the cause be overruled, and that the cause be remanded to the circuit court of the said county of Logan, to be further proceeded in according to the principles stated in this opinion, and the rules governing courts of equity.

The other Judges concurred.

DECREE REVERSED AND SUIT REMANDED.