WILEY v. MAHOOD et al.

(Absent, MOORE, JUDGE).

Decided April 28, 1877.

1877.
January Term.

1. An attorney at law, employed to collect a debt, may receive payment thereof in money, but has no right to accept anything else in satisfaction, without express authority from his client, and if he does it will be no payment unless ratified or assented to by his client.

2. He cannot give the debtor an acquittance of the claim by receiving payment thereof in a debt he, the attorney, owes the debtor.

3. He has no right to accept notes, bonds, &c., of the debtor, as collateral security for the debt, without express authority from his client; and if he does so, his client will not be bound unless he assents to or ratifies the same.

4. A recitation in a petition in chancery, filed in a subsequent suit against the debtor, by the owner of the claim, that his attorney had taken bonds, notes, &c., as collateral security, may not, under certain circumstances, amount to a ratification of the act of his attorney in so doing.

5. Where the plaintiff in a bill, petition or other pleading, has stated circumstances incorrectly, with which he may well be presumed to have been unacquainted, and the defendant does not rely upon them in his answer, the plaintiff will not be held bound by the statement.

6. If an attorney, without the authority of his client, accept bonds, &c., of the debtor, with the understanding that he is to collect them and apply them as payment on the claim when collected, in that transaction he is the attorney of the debtor, and not the attorney of his original client.

7. As soon, however, as he receives any money on the claims thus put in his hands for collection by the debtor, it is a payment to that extent, less his fees for collecting, upon the claim of his original client.

8. Where assets are to be marshaled, and one creditor has two funds to which he may resort for the payment of his claim, and another has but one, the first must previously resort to the fund for payment, to which the other cannot.

9. It is error to decree a sale of real estate until the liens thereon and their priorities are ascertained.

10. It is error to decree a sale of real estate without giving the defendant a day to redeem the property, by paying the amount charged upon it.

This was an appeal from a final decree of the circuit court of the county of Mercer, rendered on the 21st day of October, 1874, in the consolidated causes of William A. Wiley against Alexander Mahood and others, Benjamin White against Alexander Mahood and others, and Joseph H. Alvis and others against Alexander Mahood and others. Hopkins, Hull & Co. filed their petition in the said cause of White against Mahood and others.

The appeal was granted upon the petition of William A. Wiley.

The Hon. Evermont Ward, Judge of the ninth judicial circuit, rendered the decree complained of.

A full statement of the cause is given by Johnson, Judge, who delivered the opinion of the Court.

*John E. Kenna* and *David E. Johnston,* for appellant, referred to *Smith's adm'r v. Lamberts,* 7 Gratt., 138; *Fant v. Miller and Mayhew,* 17 Gratt., 187 ; 2 Tuck., 109.

*S. S. Green,* for the petitioners, Hopkins, Hull & Co. :

An attorney employed to collect a debt is a special agent, and as such must pursue his powers strictly ; he cannot do *any* act that will destroy the creditor's right of action, or discharge the debt, short of receiving *pay-*

*ment in full in money.* He has no power to commute the debt or to receive in payment or discharge thereof the bonds or other evidences of debt on third persons. *Smock v. Dade,* 5 Rand., 639; *Wilkinson & Co. v. Holloway,* 7 Leigh, 277; *Smith's adm'r v. Lamberts,* 7 Gratt., 138; *Harper, adm'r. v. Harvey et al.,* 4 W. Va., 539; *Ward v. Smith,* 7 Wall., 447; and Freeman on Judgments, §473, and cases there cited.

The answer of a defendant in equity is always competent evidence against him, when pertinent, whether between the same parties or not. *Hunter v. Jones,* 6 Rand., 541. And it is also evidence against a co-defendant where the rights of the plaintiff against the co-defendant are prevented from being complete by some question between the plaintiff and the defendant, whose answer is given in evidence. 1 Danl. Chy. Pr., 842.

The attorney collecting the debt cannot receive from the debtor claims upon third persons, to collect and apply the proceeds to the payment of the debt, *as collaterals,* in such manner as to charge the creditor for the non-collection of them. As to such claims the attorney is the agent of the *debtor* and not of the creditor; and any loss from his failure to collect the claim on the third persons must be borne by the debtor, and not the creditor. *Smock v. Dade* and *Wilkinson & Co. v. Holloway,* above referred to.

A plaintiff will not be held bound by his admissions where it is well presumable that he is ignorant of the facts, and the defendant does not rely upon the admissions in his answer. 3 Green. Ev., §275.

When a creditor receives collaterals from his debtor for a pre-existing debt, he is only held to ordinary diligence in collecting them; and should he neglect to collect them, he becomes liable to the debtor, not for their face value, but only for the *actual damages* sustained by him. These damages being uncertain and unliquidated, cannot be pleaded as a payment or set-off in a suit by the creditor upon his original claim, but must be the

subject of an independent action. *Harrison v. Wortham & McGruder*, 8 Leigh, 296.

*J. W. Davis*, for Hopkins, Hull & Co., referred to the following authorities :

*Preston v. Preston et al.*, 4 Gratt., 88 ; *Livesay v. Jarrett*, 3 W.Va., 283 ; *Halbert v. Montgomery*, 5 Dana, 13; *Scott v. Wickliffe*, 1 B. Mon., 353 ; *Given v. Briscoe*, 3 J. J. Mar., 532 ; *Harrow v. Frame*, 7 B. Mon. 127 ; *Smock v. Dade*, 5 Rand., 645 ; *Wilkinson & Co. v. Holloway*, 7 Leigh, 286 ; *Card v. Walbridge*, 18 Ohio, 411 ; *Wilson v. Jennings*, 3 Ohio St., 528; U. S. Dig., 1st series, vol. 2, p. 344, §329, 331 ; *Towner v. Lucas' ex'or*, 13 Gratt., 705 ; *Langdon v. Patton*, 13 Mass., 319 ; Stark on Ev., 820.

## STATEMENT OF THE CASE BY THE JUDGE.

At June rules, 1867, William A. Wiley filed his bill in the circuit court of Mercer county, alleging that Alex. Mahood had bought a tract of land of William Smith, and that he owed $600 of the purchase money, with interest thereon, subject to certain credits ; that said claim had been assigned by said Smith to Parkinson Shumate ; that said Shumate had recovered judgment on said claim, and that said Shumate had assigned said judgment to complainant, and prayed that the said land might be sold to pay said judgment, and that the heirs of said Smith, he having died, be made defendants, and required to make a deed for said tract of land. To this bill Mahood filed his answer, but did not claim that the judgment had been paid, or that he had any defense thereto. Wiley filed an amended bill, in which he alleged Mahood had other land, and that the land on which the lien for purchase money existed had been sold, and had not brought enough to pay his claim. It had been sold, and said Wiley became the purchaser, and on the 13th day of September, 1871, the sale was confirmed and he was given credit for what the land sold for, and a deed

1877.
January Term.

Wiley
v.
Mahood et al.

was directed to be made to him. Mahood answered the amended bill, admitting he had some of the lands described, but insisting that a part he had sold and been paid for, but not conveyed, and the other had been returned delinquent. On the 15th of June, 1872, said Mahood filed a petition praying, for inadequacy of price in the sale of the land bought by Wiley, and because Wiley had been credited on the sale for moneys paid out by him in purchasing said land at a tax sale, and for other reasons, that the decree confirming the sale be set aside, and the land resold. The record discloses nothing further in reference to the petition.

Benjamin White also filed his bill against Mahood and others, alleging a claim against George W. Pearis, Sr., and Alexander Mahood, late merchants and partners, trading under the firm and style of Pearis & Mahood. In said bill, which is filed by said White against Pearis & Mahood and others, he alleges " that the property, both real and personal, of said George W. Pearis, has long since been sold and applied to older liens, and that he, the said Pearis, is now wholly insolvent." The record shows that a summons issued, but it does not show who were before the court; the return of the officer who served it, if served at all, not appearing.

To this bill Mahood filed an answer, denying that he was responsible for said debt. In this suit Hopkins, Hull & Co. filed their petition, in which they allege that on the 13th day of August, 1858, they obtained a judgment against George W. Pearis and Alexander Mahood, merchants trading under the firm and style of Pearis & Mahood, for the sum of $1,355.94, with interest and costs. And they further allege that a *fi. fa.* issued on their judgment; that it went into the hands of the sheriff " and that upon said *fi. fa.* nothing was realized; and that subsequently said Alexander Mahood placed in the hands of petitioner's counsel as collateral security, to be collected and applied as a credit on said judgment, a large amount of bonds, &c., &c., which, if they had

been realized according to the amount thereof, would have nearly paid off said judgment, but such was not the fact. A copy of the receipt of said claims will hereafter be filed as a part of this petition, marked O. A large amount of said claims has not been made or realized, and cannot be made ; and that after applying all that has been made or realized, or can be made, will leave a balance due your petitioners on said judgment of $1,200 or more. Your petitioners come into this Court for the purpose of asking that in the suit of *Joseph H. Alvis et al. v. Reuben F. Watts et al.*, and also in any other proceeding pending in this Court, to subject the lands of Alexander Mahood to the payment of judgments against him ; that the claim of your petitioners be properly considered, its priority respected, and in any distribution of any funds arising from the sale of the lands of said Alex. Mahood, that has been, or hereafter may be made, shall be so distributed as to give to your petitioners the proper and rightful proportion thereof, according to the priority of their debt. And that if proper all the suits against said Alex. Mahood, having for their object the sale of the lands of said Alex. Mahood, in this Court, be heard together, and that this be deemed and treated as a petition in every such case, and also all such further and other relief, which is just and proper, and suited to their case, be extended to your petitioners." In this petition nothing whatever is said about the responsibility of George W. Pearis, the partner of Mahood.

Exhibit O, referred to in the petition, is as follows:

*"Statement of Debts and Receipt.*

| | | |
|---|---:|---:|
| Note on trust deed on L. D. Harvey, 1st September, 1860, | $600 | 00 |
| Interest, | 6 | 00 |
| Bond on William N. Harman, due 18th February, 1859, | 100 | 00 |
| Interest, | 10 | 70 |
| Bond on John Scott (Giles), | 99 | 00 |

*margin note:* 1877. January Term. Wiley v. Mahood *et al.*

| | | |
|---|---|---|
| Bond on D. N. Bodell, 28th February, 1859, | 308 | 06 |
| Interest, . . . . . . | 30 | 80 |
| William A. Mahood & Co. (in pencil), debt on Harrison Robinson, . . . . | 111 | 51 |
| Wm. A. Mahood & Co., debt on Charles A. Crawford, . . . . . . | 190 | 00 |
| Wm. A. Mahood & Co., debt on John Keatly, | 149 | 50 |
| William A. Mahood & Co., debt on Samuel Snapp, &c., . . . . . . | 53 | 00 |
| | $1,658 | 56 |
| Ten per cent. off, . . . . | 165 | 85 |
| | $1,492 | 71 |
| Note on Robt. Lilly, 18th April, 1860, $50 00 | | |
| Interest, . . . . . 1 50 | | |
| $51 50 | | |
| Ten per cent. off, . . . 5 15 | | |
| | 46 | 35 |
| | $1,539 | 06 |

Received of William A. Mahood the claims above stated, to be by me collected; after deducting ten per centum from the gross amount thereof for collecting the said claims, I am to apply the net balance (made) estimated at fifteen hundred and thirty-nine dollars and six cents, to the payment of a judgment in the name of Hopkins, Hull & Co. against George W. Pearis and Alexander Mahood, obtained in the circuit court of Mercer county. Given under my hand this 29th of October, 1860.

W. P. Cecil."

On the 20th day of October, 1873, Alexander Mahood answered the said petition, in which he admits the judgment, and says: "But it is not true, as stated in the said petition, that this respondent, subsequent to the rendition of said judgment, placed in the hands of petitioner's counsel, as *collateral security*, to be collected and ap-

plied as a credit on said judgment, a large amount of bonds, &c., but on the contrary, respondent did on the ―――― day of ――――, 1860, transfer and deliver to one William P. Cecil bonds and other evidences of debt, amounting in the aggregate to the sum of $1,539.06, after deducting 10 per centum therefrom for the collection thereof, which bonds said Cecil agreed to take in payment or discharge of the said judgment, deducting therefrom the said 10 per centum for the collection thereof; respondent believes the debts so transferred to the said Cecil, as attorney for petitioners, were all solvent debts and could have been collected without the loss of any portion by proper diligence on the part of the said Cecil. It may be true, as stated in said petition, that a large amount of the said bonds, &c., have not been collected, and probably cannot now be collected; but respondent avers most positively that they could at the time he transferred them to said Cecil have all been collected, as he verily believes, by the exercise of proper diligence on the part of petitioners' attorney; and surely if the said debts, or any of them, have been lost by the negligence of petitioners' attorney, the said loss ought not to fall on this respondent, but should fall on petitioners. Respondent most emphatically denies the allegation in said petition that a balance of $1,200.00 or more of the said judgment remains unpaid, but on the contrary he reiterates the averment that but a small sum (if any) remains unpaid on said judgment. And having fully answered all that he is advised it is material for him to answer, he prays to be hence dismissed with his costs."

At March rules, 1871, Joseph H. Alvis and others filed their original bill against Alexander Mahood in his own right, and as trustee in a deed of trust executed by Jacob Barger, to secure a debt therein named to William A. Mahood & Co., Reuben F. Watts, in his own right and as surviving partner of himself and William A. Mahood, deceased, late merchants and partners trading un-

der the firm name and style of William A. Mahood & Co., Ralph Hale, John Keatly, Rufus Rowland, administrator of James Rowland, deceased, Jacob Barger and William McClellan, administrator, &c., and others. The principal object of said bill was to get what they could from Alexander Mahood's estate to repay them moneys which they, the plaintiffs and part of the defendants, were compelled to pay by reason of their having been sureties for said Alexander Mahood on an administrator's bond, and to compel contribution, &c.

In this cause, on the 15th day of June, 1871, a reference was made to Commissioner Alonzo Gooch, to ascertain, among other things, and report, "what real estate, if any, lying in said county, is owned by either the said defendants Alexander Mahood, Ralph Hale, or John Keatly, and what incumbrance, if any there be, the nature, dignity and priorities of the same." The commissioner made his report, and on the 11th day of September, 1871, the report was recommitted to Commissioner Gooch with instructions to ascertain and report:

1st. The real estate owned by the defendant Alex. Mahood at the time of the rendition of the judgment referred to in the plaintiffs' bill.

2d. The amount, number and respective priorities of all liens and incumbrances on said lands, at the time of the rendition of the judgment aforesaid; what number or amount of said incumbrances have been paid off and liquidated since the rendition of said judgment.

3d. The value of said lands.

The commissioner made his report, and that part of it that refers to the liens against the lands of Alex. Mahood is as follows:

List of liens and incumbrances on the lands of Alex. Mahood to October 30, 1860:

The judgment of McClellan against
Alex. Mahood *et al.*, in the plaintiffs' bill mentioned, was entered
October 30, 1860, for  .  .  .  .          $2,750 00

At that time the following incumbrances and liens were on the lands of Alex. Mahood, to-wit:

1st. Judgment lien of Cole & Cugle *v.* Pearis & Mahood, now for the benefit of John W. Smith, it being a balance on said judgment as per return of Elijah Baily, sheriff of Mercer county, as paid on *fi. fa.* by Benj. White, as of date January 6, 1859, . . . . $57 53

Date of judgment lien, Sept. 15, '57. Interest to January 15, 1872, . 44 90

102 43

2d. Judgment lien of Ward & Gilbony against Alexander Mahood, May 28, 1858, . . . . . . 82 00

Interest from December 15, 1855, to January 15, 1872, . . . . 84 13

Costs, . . . . . . . . . . 3 32

170 35

3d. Judgment lien of Hopkins, Hull & Co. against Pearis & Mahood, August 13, 1858, . . . 1,355 94

Interest from March 22, 1858, to January 15, 1872, . . . . . 1,123 85

Costs, . . . . . . . . . . 3 63

$2,483 42

Credit by sundry payments and interest to date, . . . . . . 1,165 15

1,318 27

4th. Judgment lien of Bank of Old Dominion *v.* R. A. Richardson and Alex. Mahood and And. J. White, October 12, 1859, . . . 142 68

Interest from January 10, 1859, to January 15, 1872, . . . . . 111 32

Costs, . . . . . . . . . . 9 27

263 27

1877.
January Term.

Wiley
v.
Mahood et al.

| | | |
|---|---|---|
| 5th. Judgment lien of P. Shumate, assignee, &c., against Alexander Mahood, May 29, 1860, . . . | 600 00 | |
| Interest paid to October 30, 1859. | | |
| Interest from October 30, 1859, to January 15, 1872, . . . . . | 439 50 | |
| Costs, . . . . . . . . . . | 8 51 | |
| | | 1,048 01 |
| Amount liens and interest added, | | $2,902 33 |

| | | |
|---|---|---|
| P. Shumate's lien in suit of Wiley, as reported above, . . . . . | $1,048 01 | |
| Deduct proceed of sale of the 93 acres of land, . . . . . . | 380 81 | |
| | $667 20 | |

Leaving $667.20 to be provided for.

The following exception was endorsed upon the report by the complainants to the suit of Joseph H. Alvis and others v. A. Mahood and others: "So much of the within report is excepted to by the plaintiffs as reports judgments of Cole & Cugle v. Pearis & Mahood, and of Ward & Gilbony against A. Mahood, also of the Bank of the Old Dominion against A. Mahood et al., of Hopkins, Hull & Co. v. Pearis & Mahood, for the reasons that the same are invalid, and have long since been paid off."

On the 5th day of May, 1874, the causes were consolidated, without objection, "and came on to be heard on the papers formerly read, the answer of Ralph and Rufus A. Hale and Alexander Mahood, with replication thereto, the depositions of witnesses, the report of Commissioner Gooch, to which there are exceptions; and it appearing to the court that there are other lands and lots, belonging to the defendant Alexander Mahood, that ought to be sold and will have to be sold to meet his liabilities, as appears by the said report, and the court,

without passing on said exceptions, doth order and decree that John A. Douglass, one of the commissioners of this court, after giving ninety days' public notice, by written advertisements, posted and published according to law, of the time and place, proceed to sell the lands and lots, except 17 and 18, as appears by said report, on a credit of six and twelve months, taking from the purchasers bond, with good security, bearing interest from date, except for so much as will pay costs of suit and sale, and for that a bond may be required for the same, with good security, payable on the first day of the next term of this court, or so soon as the sale is confirmed; and this cause is continued until the next term of this court."

On the 21st day of October, 1874, the last decree was entered in the causes, the first part of which is as follows: " These causes came on again this 21st day of October, 1874, to be further heard upon the papers formerly read, the amended bills of the plaintiffs, Joseph H. Alvis and others, which it appears, has been regularly matured at rules, the separate answer of Ralph Hale, and the separate answers of Joseph P. McNutt and Rufus A. Hale, with replication to said answers, and was argued by counsel, &c." It then goes on, without referring to the report of the commissioner or exceptions thereto, and orders a distribution of the funds, and makes no reference whatever to any sale having been made under the decree of the 5th May, 1874, or whether any such sale had been made; and it further provides "that Commissioner John A. Douglass, out of the funds in his hands, or which may come to his hands, from the sale of the lands of Alexander Mahood, pay—first, to John W. Smith, assignee of Benj. White, the sum of $100.96, with legal interest thereon from the 1st day of August, 1871, less the sum of $30.00 to be paid to Pendleton and Gooch, attorneys; second, Ward & Gilbony or to Alonzo Gooch, their attorney, the sum of $164.00, with interest thereon from the 1st day of August, 1871;

third, to Hopkins, Hull & Co., or their attorney, the sum of $600.00, with interest thereon from the 1st day of September, 1860, subject to a credit of $174.00 as of January 15, 1861, and less interest from the 28th of April, 1861, until the 6th day of August, 1866; the court being of opinion that the L. D. Harvey debt, transferred to William P. Cecil, former counsel for Hopkins, Hull & Co., and referred to in deposition of Alex. Mahood, was not collected, save $174.00 as aforesaid, that being the net amount of the sale made under the trust deed referred to in the deposition of said Mahood, made on the —— day of ————, 1873, after deducting purchase money due upon said land from said Harvey. And the court being further of opinion that said Hopkins, Hull & Co. did not use due diligence in collecting said $600 debt, said credit is fixed as of the 15th January, 1861, as aforesaid, said purchase money being deducted as of January 15, 1861; and any residue of said fund said Commissioner Douglass shall pay to plaintiff, William A. Wiley."

From this decree the appeal is taken by William A. Wiley. It nowhere appears from any of the decrees or orders found in the causes, or any of them, that there was any reference to ascertain whether the firm of Pearis & Mahood had any property. It is nowhere alleged in any of the pleadings that they had, or had not. The nearest approach to it is in Benjamin White's bill, where he says that George W. Pearis is insolvent. But it does not appear any where that he was served with process in the suit, or that the bill as to him was taken for confessed.

There were only two depositions taken in the cause, one of E. T. Mahood, and the other of A. Mahood. The former in substance deposes that he had seen the original receipt of William P. Cecil; that he had it once in his possession, but did not know what had become of it, and that the exhibit filed was a copy thereof. A. Mahood deposed in substance that he had no doubt but that at

the time the receipt was given by Cecil, any one of said debts could have been made, or at a short or reasonable time afterward; that the debt of $600, referred to in the receipt, was a bond executed by Harvey to deponent, and was secured by deed of trust, of record in the county of Mercer; that the deed of trust conveyed a tract of land on "Flat Top Mountain," into the title of which tract deponent inquired, and ascertained that it was a part of a tract of land purchased by Joseph T. Sweeney and his father, Martin Sweeney, of Samuel Price, agent for Sarah Stewart. Said Sweeney sold said land to Harvey, and both assured deponent that there was no purchase money due for said land to any one; that said Harvey was entitled to the legal title, and deponent was sure if the land had been sold any time before the war it would have brought an amount more than sufficient to have paid the whole debt.

The decree shows that $174 was all that was realized after the payment of the purchase money due to Harvey.

JOHNSON, JUDGE:

There is much complication in these causes; and if their consolidation had not been acquiesced in, without objection, it would certainly have been improper to have made such an order.

Both the appellant, and appellees Hopkins, Hull & Co., claim that there is error in the decree of the 21st of October, 1874; the former, because the claim of Hopkins, Hull & Co. was placed before that of Wiley, in the distribution of the proceeds of the sale of Mahood's lands, Wiley contending that Cecil, the attorney of Hopkins, Hull & Co., had received of Mahood, bonds, &c., in full satisfaction of their judgment; and that if they were not received as a payment of the judgment, that they were received as collaterals, and that Hopkins, Hull & Co. are responsible for the negligence in their attorney in not using due diligence in collecting these claims.

Hopkins, Hull & Co. complain that they were sub-

jected to a loss of interest in crediting the $174 realized from a sale under the trust deed, in 1873, as of January 15, 1861.

Was the judgment paid by a transfer of bonds made to Cecil, the counsel of petitioners? An attorney at law occupies a position of trust, and his duties, and the extent of his powers, have been very clearly defined. At one time it was doubted whether he had any right to receive the money of his client; but it has been long ago definitely settled that where an attorney has received a claim for collection, that a payment to him of the money due to his client on the claim is a payment to the client himself, as far as the debtor is concerned. But without special authority, he has no right to receive any thing from the debtor except money. If the attorney owes the debtor of his client an amount equal to the claim which he has for collection, the law will not permit the attorney to pay his own debt by giving up the claim of his client. In *Cost v. Genette & Smith,* 1 Porter, 212, an action was brought to recover the amount of a promissory note, which, according to an agreed state of facts, the plaintiff had confided to an attorney at law for collection, and which by an agreement between the said attorney and defendant, had been surrendered to him in payment and discharge of the attorney's own debt to the defendant; and the plaintiff received the amount of the note from the defendant. Judge Thornton in delivering the opinion of the court, said: "I will take occasion to remark that, although I consider the general doctrine of agency so essential to the advantageous conduct of the commerce of the world, as applying to the relation of client and attorney, yet perhaps in no other case does the safety of the community require it less than in this. It may be from that *esprit de corps* which to some extent actuates every individual of a class; but I have thought that no caste in the community gave better evidence of trustworthiness than the profession of the law. Their whole business is confidential, and at all times much of

the property of the country is subject to their disposal. That such confidence is rarely broken speaks a higher eulogium upon the honesty of the profession than any language I could use. It was put with much ingenuity by the counsel that if the attorney could collect the money and then pay off his debts with it, why not permit that to be done which, in its result, is just like it— that is, pay off his debt at once with the note? Now, though these cases are alike, yet *nullum simile et idem*, the only reason why the first is allowed is, that from a necessity it cannot be avoided, and so does not furnish any argument in favor of what, though no worse, may be avoided." The money could not be followed, but the improperly surrendered note can; and it would not do for the courts to countenance such conduct in persons occupying such *confidential* relations to those for whom they transact business as attorneys sustain to their clients. Its manifest tendency would be to impair the confidence that clients must necessarily repose in their attorneys. See also *Gullett v. Lewis*, 3 Stew., 23; *Craig v. Ely, ex'or*, 5 Stew. & P., 354; *Commissioners v. Rose et al.*, 1 Desau., 461; *Wilkinson & Co., v. Holloway*, 7 Leigh, 277.

An attorney at law employed to collect a debt may receive payment in money, but has no right to accept any thing else in satisfaction, without express authority. *Wilkinson & Co. v. Holloway*, 7 Leigh, 277; *Wright v. Daily*, 26 Tex., 730; *Gullett v. Lewis*, 3 Stew., 23; *Kent v. Ricards*, 3 Md., Ch. 393; *Smock v. Dade*, 5 Rand., 639; *Smith's adm'r v. Lamberts*, 7 Gratt., 138; *Harper, adm'r, v. Harvey et al.*, 4 W. Va., 539.

In *Smock v. Dade* Judge Summers said: " The authority of the attorney to receive payment of the debt which he is employed to recover, we think well settled, but that authority, in our opinion, does not extend to its commutation without the assent of the client."

In that case the receipt of the attorney was as follows:
" Received 25th November, 1822, from Col. Lawrence

T. Dade, one hundred and fifty-four dollars and seventy cents in money, also the bond of William Quarles for one hundred and seventy dollars and thirty-nine cents, payable in four months, and a draft on Anthony Buck for three hundred dollars at ten days' sight, which, when paid, will be in full of the executions of James Smock and Peter Smock against him in Orange county."

Judge Summers further said : " In relation to Quarles' bond, we regard Banks" (who was the attorney for Smock) "as the attorney of Dade, not of Smock. On giving an acquittance or receipt for the money he must have represented the former, not the latter. It was a new engagement, in which all his authority was derived from Dade ; to him he must have looked for compensation, and to him he was accountable. To extend the authority of the attorney beyond this limit, without a general discretionary power from the party employing him, would carry the responsibility of the first client into transactions far beyond the first engagement, and which might be induced solely with a view to the profit of the attorney or the accommodation of the debtor."

This decision of the general court of Virginia was approved in *Wilkinson v. Holloway,* 7 Leigh, 277, and in *Smith's adm'r v. Lamberts,* 7 Gratt., 136. In the last named case the receipt of the attorney was very similar to the one in this case. It was as follows: " Received June 10, 1819, of Mr. George White, Jr., one of the executors of James D. Dishman's estate, William Coakley's note for 396 dollars, 21 cents, due 1st March, 1819, on which I am to bring suit, and after paying myself my fee and commission, I am to apply the balance to the credit of S. and J. Lamberts' judgment against Dishman's executors."

In that case the attorney collected the money, and the court said by Daniel J.: "I do not see how we can approve the decision in *Smock v. Dade* in regard to so much of the creditors demand as was held to be paid by the proceeds of the draft, and yet consistently decide

that the debt in this case has not been satisfied by Brooke's (the attorney's) receipt in actual money of the amount of Coakley's note."

We think there is no doubt, where the attorney collects the money, although he collects it upon a bond that the debtor may put into the attorney's hands; the moment the attorney receives the money it is a payment on his clients claim. It cannot be that there was any payment by Mahood to Hopkins, Hull & Co., by placing the bonds, &c., in their attorney's hands; if it had been a complete assignment to the attorney of the bonds, it would in the absence of special authority to Cecil from his clients have been wholly unauthorized. But the terms of the receipt itself, brings it within the rule decided in the cases we have cited, and shows, if Cecil had authority to accept the bond in payment it was not done. We conclude that Cecil acted entirely as the counsel of Mahood in the matter, unless it satisfactorily appears that he was acting under the authority of Hopkins, Hull & Co., or that they by their ratification of his acts, have made them their own. It is true that Hopkins, Hull & Co., by way of recitation say, after setting up their judgment, "that subsequently said Alexander Mahood placed in the hands of petitioner's counsel as collateral security to be collected and applied as a credit on said judgment, a large amount of bonds, &c., &c., which if they had been realized according to the amount thereof, would have nearly paid off said judgment, but such was not the fact.

" A large amount of said claims has not been made or realized and cannot be, and that after applying all that has been made or realized, or all that can be made will leave a balance, &c."

This allegation is positively denied by Mahood's answer. He insists they were not put in his hands as collateral security, but were transferred as payment.

The petitioners do not say that they ratify the act of their counsel, do not say that what he did was with their

knowledge or consent, and the prayer of their petition is inconsistent with the idea that they ratified the act of Cecil. The receipt itself shows that Mahood's claims were not put into Cecil's hands as collateral security; the terms of the receipt itself show that was not the intention, but that Mahood put the claim into Cecil's hands, as his attorney, and was to pay him for collecting them, and directed him what to do with the money when collected. There was no obstacle in the way of Mahood going to Cecil at any time and requiring him to follow his directions as to the claims, how they should be collected, &c. Cecil was answerable to Mahood for his conduct in collecting said claims, or rather in his negligence concerning them. The petitioners were evidently mistaken in the facts when the petition was drawn, and it is probable that neither of them ever saw the petition.

Where the plaintiff has incorrectly stated circumstances with which he may well be presumed to have been unacquainted, and the defendant does not rely upon them in his answer, the plaintiff will not be held bound by the statement. 3 Greenl. Ev., §275.

The receipt which the petitioners say in their petition they will file, and which the person who drew up the petition probably had never seen, when produced shows conclusively that the statement referred to was a mistaken statement. In the case of *Wilkinson & Co. v. Holloway*, 7 Leigh, 277, there was an attachment in chancery against Holloway, who claimed he had paid the debt by a transfer of a bond of Thompson & Scott. In the bill they exhibited a copy of the record of the suit brought for their benefit on the bond against Thompson & Scott, and admitted they had paid costs in that suit, but failing there, they brought their suit directly against Holloway. Judge Brockenbrough said: "The plaintiffs have not admitted by their pleadings, nor is there any proof of actual consent; but it has been inferred that there was such consent, from the circumstance that the plaintiffs paid some of the costs incurred in the suit brought on

1877.
January Term.

Wiley
v.
Mahood *et al.*

the bond which Glenn, the attorney, took from Holloway in discharge of his bond. It is to be remarked that the answer of Holloway does not put his defense on the ground of the acquiescence of the plaintiffs, but relies on the authority of the attorney to make the arrangement which he did make. I do not think that the court ought to supply his deficiencies and furnish him with a weapon he did not wish to wield. If he had thought proper to rely on the acquiescence the plaintiffs might have given circumstances in evidence which would have led irresistably to the conclusion that they did not agree to take the bond of Thompson & Scott in satisfaction of Holloway's debt to them; and that although they were willing to wait to see whether anything could be made from the suit against those obligors, and for that purpose to pay the costs, yet that they did not ratify the act of Glenn, who, in that matter, acted rather as the agent and attorney of Holloway, than of themselves." Judges Carr, Cabell and Brooke concurred with Judge Brockenbrough, and Judge Tucker, the president of the court, dissented, taking the ground that the plaintiffs had ratified the action of Glenn.

In this case, according to the principles decided by the court in that case, we think the petitioners, Hopkins, Hull & Co., have in nowise ratified the action of Cecil. Mahood did not rely on the admission that the claims were placed in Cecil's hands as collaterals, but insisted that they were transferred to him in payment of the judgment. In the case of Wilkinson & Co. *v.* Holloway, there was no receipt given by the attorney; here there was; and by that receipt it is shown that the claims were placed in his hands by Mahood, and that as to them he was the attorney of Mahood, and not of Hopkins, Hull & Co. Wiley can occupy no higher ground than Mahood. He does not, in the case, attempt to charge, or prove, that Hopkins, Hull & Co. acquiesced in and ratified the act of Cecil and made it their own.

It follows, as a necessary consequence, that the decree

is erroneous as to Hopkins, Hull & Co., where it gives Mahood credit on their claim, as of the 15th of January, 1861, instead of the — day of ——, 1873, the date of the sale under the trust deed, which date is not fixed in the record. Hopkins, Hull & Co. are entitled to interest on their claim, without any abatement thereof during the war.

It is a well settled principle, that where assets are to be marshaled, and one creditor has two funds to which he may resort for the payment of his claim, and another has but one, that the first must be paid out of the fund to which the other cannot resort. If Pearis & Mahood had any partnership property, that property would, under ordinary circumstances, be primarily liable for the payment of the claims of Hopkins, Hull & Co., and Benjamin White, as their judgments were recovered against Pearis & Mahood. It does not appear in the cause that Pearis was before the court at all. The commissioner was not directed to ascertain whether there was any partnership property of the firm of Pearis & Mahood, or to ascertain what property Pearis had, who was jointly bound with Mahood.

The commissioner ought to have been directed to have ascertained and reported these facts.

The sale was ordered without confirming the commissioner's report. Where there are various liens on lands of a debtor, it is error to decree a sale of the lands without first ascertaining the amounts of the liens and their priorities. *Cralle v. Meem*, 8 Gratt., 530; *Buchanan v. Clark et al.*, 10 Gratt., 165; *Livesays, ex'rs, v. Jarrett*, 3 W. Va., 283; *Murdock's adm'r v. Welles et al.*, 9 W. Va. 552.

No time was given Mahood to pay the liens before the lands were ordered to be sold, and it is error to decree the sale of land, without giving to the defendant a day to redeem the property by paying the amount charged upon it. *Pecks v. Chambers*, 8 W. Va., 210. · For these reasons the decree for the sale of the residue of Mahood's

lands entered on the 5th day of May, 1874, is reversed and annuled; and the decree rendered in these causes on the 21st of October, 1874, so far as it directs the distribution of the proceeds arising from the sale of Alexander Mahood's lands, be reversed, with costs to William A. Wiley, the appellant, against the appellees, Hopkins, Hull & Co., and in all other respects said decree is affirmed; and this cause is remanded to the circuit court of Mercer county, with instructions to have the said Geo. W. Pearis served with process, if he has not already been served, to recommit the report of commissioner Gooch, that it may be ascertained whether the firm of Pearis & Mahood have any property, and if so what, and the liens thereon, and their priorities; also what property, if any, said Geo. W. Pearis has, and the liens thereon, and their priorities, and further to proceed with said cause according to the principles of this opinion, and the rules governing courts of equity.

DECREE REVERSED and cause remanded.