# CHARLESTOWN.

## JARRETT'S ADMRS. *v.* LUDINGTON ET AL.

### September 9, 1876.

1876.
August Term.

.J. held the bond of L. and N. for $1,200, payable on demand and dated April 1, 1862. On which was credited as received in Confederate bonds January 14, 1863, $959,71. This bond was executed in Greenbrier county when Confederate treasury notes were the prevailing currency and with reference to them as a standard of value. Confederate notes were, then worth as compared with gold, $1.40 to $1.00 in gold. On July 2,1866, J. put this bond in the hands of an attorney with directions to collect it, or else have it renewed with security. The parties to this bond when called upon by the attorney, executed their bond to J. for $351.56, the whole balance of this $1,200 principal and interest without any abatement except the full amount of the credit in Confederate bonds. Nothing more appears as to what took place when this last bond was executed; it was payable on demand —HELD: under the peculiar circumstances of this case :

*First.* The giving of this new bond is not to be regarded as a mere renewal of the old bond without any agreement expressed or implied to forego any abatement to which it might be subject on account of its being given with reference to Contederate notes as a standard of value, but it is to be regarded as a final settlement between the obligors and the obligee in the original bond and binding on all parties.

*Second.* There is no usury in this transaction.

Writ of error to a judgment of the circuit court of Greenbrier county entered on the twenty-sixth day of June, 1875, in the above entitled action in which Alexander F. Mathews and Joseph Jarrett, administrators of James Jarrett, deceased, were plaintiffs, and Samuel C.

Ludington and James M. Nickell were defendants, granted
on petition of said administrators.

The facts of the case appear in the opinion of GREEN,
Judge.

Hon. Homer A. Holt, judge of said circuit court pre-
sided at the trial below.

*Mathews* and *Mathews* and *Samuel Price* for plaintiffs
in error.

*R. F. Dennis* and *A. C. Snyder* for defendants in error.

GREEN, JUDGE: .

James Jarrett's administrators brought an action of
debt, in the circuit court of Greenbrier county, against
Samuel C. Ludington, and James M. Nickell, upon a
bond for $351.56, payable on demand, and dated, July 2,
1866. The defendants filed pleas of payment, and usury,
to which the plaintiff replied generally, and issues
were joined. On June 26, 1875, by consent of parties,
the cause was submitted to the court, in lieu of a jury.
The defendants were allowed to make any defences,
under the issues in the cause, of any matters which they
could make, if said matters were specially pleaded.
And, thereupon, the court, having heard the evidence,
found that the plaintiffs were entitled to recover from
the defendants $393.68, with interest thereon from June,
26, 1875, until paid, and judgment was, accordingly, ren-
dered for said sum, and interest, and costs. The plain-
tiffs and defendants, both, excepted to this action of the
court, and their bill of exception was signed, sealed, and
enrolled. It certifies all the facts proven, as follows:
The giving of the bond sued on; that it was executed
the day it bears date; that the consideration of it was
the balance on a bond, executed by the defendants to the
plaintiffs' intestate, for $1,200, on April 1, 1862, after
deducting the credit indorsed on this bond, which in-
dorsement was in these words, " Received, January 14,
1863, in Confederate bonds, on the within, $959.91—

Jas. Jarrett.;" that said bond of $1,200, according to the true understanding and agreement of the parties, was to be paid in Confederate treasury notes, and was executed, in Greenbrier county, in reference to these as a standard of value; that, when executed, the said notes were the prevailing currency, in that county, in circulation, and, as compared with gold at that time, stood, in value, as $1.40 to $1.00 in gold; that the whole balance of said bond of $1,200, principal and interest, without any scaling, or abatement, except the credit, was included, or intended to be included, in the said bond of $351.56 in suit; that this bond was taken by the attorney of the plaintiffs' intestate, who was not present at this time, but who had directed his attorney, either to collect the amount due on the bond of $1,200, or else to renew it with security.

The plaintiffs obtained a *supersedeas* to the judgment of the circuit court. The court will take judicial notice, that the $1,200 bond was executed during the war; and that the war had, in fact, closed, shortly before the bond sued on was executed; that Confederate treasury bonds, as well as notes depreciated rapidly after the first year of the war. The courts had not then rendered any decisions which could enable the parties to these transactions to form any correct idea of what might be held to be their respective rights and obligations; whether the $1,200 bond could be enforced, at all, or, if it could be, whether it could be enforced according to its face, or whether it would be scaled according to the value of Confederate notes at the time it was executed, or whether the defendants would be entitled to any credit, by reason of the Confederate bonds which were paid to the plaintiffs' intestate, and if so, whether the credit allowed would be the face value of these bonds, or their actual value in gold at the time they were paid. No one could form any idea what, if anything, would have been the recovery, if this $1,200 bond had been sued upon. In this state of uncertainty, as to what were their respective rights, this

new bond of $351.56 was executed by the same parties who had executed the $1,200 bond. There is nothing in the evidence to indicate that the parties did not intend the giving of this bond as a final settlement of the whole matter. The design of the plaintiffs' intestate, in placing the $1,200 bond in the hands of the attorney seems to have been, to procure such final settlement, and, if it could not be closed, then the attorney was instructed to sue upon it, that the courts might determine the rights of the parties. In the absence of any evidence to the contrary, I must regard the giving of this bond as such final settlement. The defendants, in executing this bond, sued upon, did not, without a fair consideration, surrender to the plaintiffs' intestate their right to resist the payment of any part of this bond of $1,200, or their right to insist on scaling it according to the value of Confederate notes, when it had been executed, for the plaintiff's intestate, in accepting the bond sued upon, surrendered his right to resist any credit being given for the Confederate bonds which had been paid to him, or to insist upon their being scaled to their value in gold, when paid. These Confederate bonds were, when paid, far more depreciated in value than Confederate notes, when the bond was executed, some nine or ten months before. The defendants had received, from the plaintiffs' intestate, more than they had repaid, what was equivalent in gold to, at least, twice the amount of the new bond which they executed. Under these circumstances, I cannot regard the taking of this bond of $351.56, as a final settlement of these transactions, either as unreasonable or oppressive. There was no usury in any of these transactions. There is no proof as to what was the consideration of the $1,200 bond, but as it was payable on demand, it is obvious that it was not given for a loan of money, or the forbearing to collect a pre-existing debt. It does not appear, that forbearance to collect this debt constituted any part of the consideration of the bond sued upon: on the contrary, as I understand the evidence, the whole considera-

tion for this bond was the closing, finally, of transactions, which, unless so closed, would have given rise to litigation, the result of which was entirely uncertain. The burden of proving this plea of usury was upon the defendants, and they wholly failed to prove that this bond was given in consideration of forbearance to collect the debt, or that the amount of the bond was increased by reason of such forbearance : on the contrary, the new bond was taken, payable on demand, and the amount of it was, in view of the uncertainty of the amount which the courts might hold to be due, but a fair and reasonable compromise.

The fact, that the courts might now, perhaps, hold, that if this new bond had not been given, that the defendants owed the plaintiffs less than the amount of the new bond, is no reason for pronouncing it usurious, or for allowing any equitable offset, on account of the failure of consideration. The real consideration was the final settlement of a doubtful controversy; and this we have seen was a full and fair consideration. The prevention of litigation is not only a sufficient, but it is a highly favored consideration, and no investigation into the character of the different claims surrendered will be entered into, it being sufficient, if the parties at the time thought there were doubtful questions between them. See *Zane v. Zane*, 6 Munf. 406 ; *Moore, &c. v. Fitzwater*. 2 Rand. 442. The judgment of the circuit court was apparently based on the idea, that the taking of the new bond was intended to be the mere renewal of the old bond, after deducting the credit, without any agreement expressed or implied, to forego any abatement, to which the defendants might be entitled, on account of its being a Confederate transaction. There was, accordingly, made a scaling of the balance due, after allowing, without any scaling, the face amount of the Confederate bonds, paid by the defendant. I do not think, that the evidence sustains this view of the case. The true amount of the bond sued on,

1876.
August Term.
—————
Jarrett's Admrs
v.
Ludington.

and interest to June 26, 1875, when the judgment of the circuit court was rendered is $541,05.

The judgment of the circuit court must, therefore, be reversed; and this Court will proceed to render such judgment, as the circuit court ought to have done. It is considered, that the plaintiffs recover from the defendants the sum of $541.05, with interest thereon, from the twenty-sixth day of June, 1875, till paid, and their costs expended in the circuit court and in this court.

Haymond and Moore, Judges, concurred.

Edmiston, Judge, dissented.

JUDGMENT REVERSED.