# Wheeling.

## KENT, PAINE & CO. *v.* CHAPMAN *et al.*

Decided November 5, 1881.

*(PATTON, JUDGE, absent.)

1. In a chancery suit brought by K. of Richmond against A. B. & C. of Mercer county in this State to enforce the lien of a judgment obtained before the war against A. B. & C. as partners on an accepted order known to the partners to include the amount due from the partnership to K. and also an individual debt due from C. to K. HELD:

    I. There should be no abatement of the interest on the judgment during the war, Richmond and Mercer county being judicially known to the Court not to be in territories, which were hostile to one another during the war.

    II. The court ought not in such a suit to order a settlement of the partnership accounts with a view of ascertaining the amount, for which the lands of each partner should be primarily subject, and with a view to the rendering of a proper decree among the co-defendants after such settlement; the case justifying such a decree between co-defendants would not in such a cause be made out by evidence arising by pleadings and proofs between the complainant and defendants.

    III. The court in such a case ought not to decree the lands of C. primarily liable for so much of the judgment, as was barred on his individual account with K , as a settlement of the partnership accounts might show the other partners indebted to him in a still greater amount, and the equities between the co-defendants ought not in such a suit to be enquired into by the court

    IV. The lands of each partner ought to be held primarily responsible for the portion of K's judgment, which corresponds with his interest in the profits and losses of the partnership under the articles of co-partnership.

2. An attorney at law employed to collect a debt may receive payment in money but has no right to accept bonds, notes or anything else in satisfaction or as collateral security for the debt without express authority from his client; and if he does, it will be no payment, and will not bind his client, unless he expressly or impliedly ratifies the act of his attorney.

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Mercer, one rendered on the 6th day of May, 1873, and the other on the 5th day of May, 1874, in a cause in said court then pending, wherein Kent, Paine &

*Cause submitted before Judge P. took his seat.

Company were plaintiffs, and A. A. Chapman and others were defendants, allowed upon the petition of said plaintiffs.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the decrees appealed from.

GREEN JUDGE, furnishes the following statement of the case :

In 1870, Kent, Paine & Company of Richmond, filed a bill in chancery in the circuit court of Mercer county to enforce a judgment-lien on real estate against the lands of the defendants in their judgment and in the hands of purchasers from one of them after the judgment was docketed, and in the hands of the heirs and devisees of another of them, who was dead. The amount of the plaintiffs' judgment on the forthcoming bond was on December 12, 1857, when it was rendered, $1,324.20 with interest thereon from that date and $4.13 costs. The defendants to the original judgment were James M. Bailey, A. A. Chapman and W. R. Bailey, merchants and partners under the style of Baileys & Chapman. James M. Bailey died before the institution of this chancery suit ; and Elijah Bailey qualified as his executor. He left lands, a portion of which were in said county of Mercer, which on his death came into the hands of his widow and children as his heirs and devisees. William R. Bailey became insolvent ; but he too had lands in this State, when said judgment was rendered, which he conveyed to purchasers after the judgment aforesaid was legally docketed in the proper office, so that this judgment was a lien on these lands in the hands of the purchasers. A. A. Chapman also owned lands in this State, on which said judgment was a lien.

During the progress of the suit it appeared, that James M. Bailey's executor had no assets of his testator in his hands applicable to the payment of this judgment..

The bill asked, that the lands of the defendants to said judgment might be sold to satisfy the judgment. The executor of James M. Bailey filed his answer setting out, that A. A. Chapman was interested in the firm of Baileys and Chapman, and that his interest in said firm was two-thirds, and that the two Baileys' interest was one-third, as appears by the articles of co-partnership ; and that though the judgment of the plain-

tiffs was against all the members of said partnership, yet in fact the firm only owed $521.19, and that the balance of the judgment, $596.27, was made up of a claim of the plaintiffs against A. A. Chapman individually; and the answer therefore claims, that the estate of his testator is only responsible primarily for one-sixth part of this $521.19 and of the interest and costs. On September, 14, 1871, the court referred the cause to a commissioner to ascertain, what amount of the plaintiffs' judgment should be paid by the defendants, A. A. Chapman, William R. Bailey and James M. Bailey's estate or their representatives, and what lands were liable to the payment of the judgment, and in whose hands the lands were, and directing him to convene before him the judgment-creditors of A. A. Chapman and William R. Bailey and ascertain their respective liens and priorities, and also to convene before him and ascertain the creditors of James M. Bailey, deceased. On February 20, 1872, the commissioner reported, that by the articles of co-partnership between the members of the firm of Baileys and Chapman A. A. Chapman was responsible for two-thirds of the debts of the firm and each of the Baileys for one-sixth of those debts; and therefore he reported, that the plaintiffs' judgment should be paid by them or their representatives in this proportion. A large number of depositions was taken with reference to the business of this firm, which was in existence about a year from November, 1855, with reference to which the commissioner reports :

" If it was intended by the decree of reference, that the amount to be paid respectively by each of the defendants was to be ascertained by reference to an examination into the minutiæ and details of the business of the said mercantile firm, so far as the results and profits or losses of said business was concerned, then your commissioner would be unable to make any definite or satisfactory statement or report. From the depositions taken before your commissioner, and herewith filed, it will be seen, that the result as to profits or losses of said mercantile business are unknown to the parties themselves. The books and papers of said firm and business have been destroyed ; and the testimony of the parties is indefinite, unsatisfactory, and to some extent conflicting, thus presenting no data, by which anything like an account or satisfactory

settlement or statement can be made. It therefore seems to your commissioner, that in the absence of all other means of ascertaining the liability of each one of the parties in the premises resort must be had to the articles of co-partnership between the parties, leaving to the parties themselves to adjust their own partnership-business and ascertain the liability of each to the other without any reference to the plaintiffs' demand."

In ascertaining the plaintiffs' debt two statements are made ; one is for the whole amount of the judgment, the other credits it by $463.56 collected by the attorneys of the plaintiffs on claims of the firm of Baileys & Chapman, but not applied, as it is claimed it should have been, to the plaintiffs' judgment by these attorneys. Upon this subject the report of the commissioner says :

" It appears from the evidence submitted to your commissioner and herewith filed, that William R. Bailey placed in the hands of the clerk of the county court of Mercer county several bonds or notes, and directed suit to be instituted thereon for the benefit of Kent, Paine & Co. Messrs. Pendleton and Johnston were marked as attorneys for Kent, Paine & Co. without their knowledge or any consultation with them, as Mr. Johnston deposes. Suits were accordingly instituted on said bonds or notes, and judgments obtained thereon. Subsequently Messrs. Pendleton and Johnston, in March, 1860, collected the sum of $270.02, the net proceeds of said suits and judgments. Instead of applying said sum of money towards the payment of the debt due to Kent, Paine & Co., on which suit had already been instituted, Messrs. Pendleton and Johnston applied it to the payment of other debts, which were in their hands for collection against Baileys & Chapman and other claims by the direction of William R. Bailey himself, to prevent other suits against Baileys & Chapman. (See the affidavit of A. G. Pendleton filed by consent, and the deposition of James D. Johnston). Mr. Johnston deposes that he did apply the money as directed by said W. R. Bailey, and files with your commissioner a statement as an exhibit marked 'Z' to show the amount collected and its application. If therefore, your Honor from the evidence submitted should decide, that the money aforesaid collected by Messrs. Pendleton

and Johnston ought to have been applied towards the pay-
ment of the debt due to the plaintiffs instead of towards the
debts it was really applied to, then Messrs. Pendleton and
Johnston will have to account with the plaintiffs for the
amount collected as aforesaid, and statement '31' will show
that amount, as well as the amount to be paid by each of the
defendants.  This latter statement is based upon the supposi-
tion, that the bonds or notes, upon which suits were brought,
and on which Messers. Pendleton and Johnston subsequently
collected the money before referred to, were a part of the assets
belonging to the firm of Baileys & Chapman.  W. R. Bailey
deposes, that he does not recollect, whether said bonds or notes
were his individual property or not; that he sometimes used
his own means in payment of the debts of the firm, and also
at other times used the assets of the firm in payment of his
individual liabilities."

The numerous depositions returned with this report show,
that the conclusions drawn from them and the general state-
ment of their contents and character are accurately given by
the commissioner.  The other matters referred to by the com-
missioner were also reported on ; but this part of his report
is not copied into the record, there being, I presume, no con-
troversy about the matters contained in these omitted parts
of the report.  An amended bill was filed, but the larger
part of it, the clerk certifies, has been torn off and lost.  It
does not appear what this amended bill set out, except that it
states, that said William R. Bailey since the rendition and
docketing of the judgment of the plaintiff sold his real estate
to one Philip P. Bailey, who has since died, leaving as his
heirs children, Louisa, who married Henry S. Colfee, Nancy
Bailey, Mary Bailey and Henderson Bailey.  They are asked
to be made defendants; and that so much of the real estate
of William R. Bailey, as is now in the possession of said
parties, be sold to satisfy his proper share of the plaintiffs
judgment.  On May 1, 1872, the court recommitted the cause
to the commissioner to correct his report, so as to show the
true amount due to the plaintiffs.  His former report was
based on the original judgment of the plaintiff instead of on
the judgment on the forthcoming bond ; and the commissioner
was again directed to show, what proportion of said judgment

shall be paid by each of said defendants and make report. A. A. Chapman then filed his answer, he states in his answer, that he furnished all the capital for the firm of Baileys & Chapman ; that the Baileys had charge of the business and represented to him, when the firm was dissolved, that they had made money, and that they would pay off all the liabilities of the firm, return the capital that he had advanced, and divide the profits. But this was never done, and there are in their hands assets of the partnership sufficient to pay all its liabilities. And he insists, that the lands of the Baileys should be held primarily liable to pay the plaintiffs' judgment.

The commissioner on August 24, 1872, made his second report, in which he states the amount of the plaintiffs' claim as shown by the judgment on the forthcoming bond, and divides, as he did before, two-thirds to A. A. Chapman and one-sixth to the representatives of each of the Baileys. A number of depositions was again taken, with reference to which he reports : " The evidence taken before your commissioner since his former report is, like that heretofore taken and filed, conflicting and contradictory, and furnishes no satisfactory data, by which the respective liabilities of the partners composing the firm of Baileys & Chapman, each to the other, can be arrived at with any degree of accuracy." The depositions themselves show, that this is their true character. James M. Bailey's executor excepted to this report, that his testator's estate was only liable for $521.19 with interest thereon, as this was all that the firm of Baileys & Chapman owed Kent, Paine & Company, and that the residue of the plaintiffs' claim was a private debt of A. A. Chapman's, as he insisted the depositions showed.

At September term, 1872, the cause was again recommitted to the commissioner with instructions to show what amount was due from each of the partners in the firm of Baileys & Chapman on plaintiffs' judgment.

On May 6, 1873, the court rendered this decree :

"On this 6th day of May, 1873, this cause being called, the defendant, A. A. Chapman, tendered his amended answer herein, to the filing of which the plaintiffs, by their counsel, objected, and the court having overruled the objection, permitted the same to be filed upon the condition, that the de-

fendant would consent that the plaintiffs may file their repli-
cation to the said amended answer within sixty days, to oper-
ate as if filed on' this day, and consent is given; and there-
upon the plaintiffs demurred to the said amended answer of
said A. A. Chapman so filed, and the defendant, Chapman,
joined in the demurrer, and the same being argued, the court
doth overrule said demurrer; and thereupon the cause came
on to be heard upon the process regularly executed on all the
home-defendants, by personal service, and upon the non-
resident defendants by posting and by publication, upon
the bills and amended bills of the plaintiffs, and the exhibits
therewith filed, upon the petition of James D. Honaker, and
upon the answer of the adult defendants, to wit, A. A. Chap-
man, and amended answer of the same, the answer of James
D. Honaker, of Elijah Bailey, executor of James M. Bailey,
deceased, and the answer by their guardian *ad litem* of the
infants, James E. Honaker and Isabella, his wife, and of
George White and Alice, his wife, and upon reports of
commissioner, Alonzo Gooch, and exceptions thereto, upon
depositions, and exceptions thereto, and on replications to all
the answers except the last of defendant Chapman, and upon
argument of counsel. And the court being sufficiently ad-
vised, and being of opinion, that the cause is not ripe for de-
cision as to the matter set up in the said amended answer of
defendant Chapman, filed at this term, the cause is retained
as to the sum of $596.29, with the interest thereupon from
December 12, 1857, being the matter set up in the said
amended answer, but the court being of opinion, so far as
the plaintiffs are concerned, there is no just exception to the
report of the commissioners that is well taken, the court being
of opinion that there is nothing in the cause to prevent the
plaintiffs from realizing the residue of the debt claimed by
them in their bill and amended bills, it is ordered, adjudged
and decreed that the plaintiffs recover of the defendants, A.
A. Chapman, William R. Bailey, of Elijah Bailey, executor
of James M. Bailey, deceased, of James D. Honaker and
Isabella, his wife, of George W. White and Alice, his wife,
Gaston C. Bailey and Daniel M. Bailey, to be recovered of the
estate of James M. Bailey in the hands of his executor, Elijah
Bailey, unadministered, and in the hands of James D. Hon-

aker and Isabella, his wife, George W. White and Alice, his wife, Gaston C. Bailey and Daniel M. Bailey, heirs-at-law of James M. Bailey, deceased, the sum of ($1,142.39) eleven hundred and forty-two dollars and thirty-nine cents; and the court being of opinion that at the present state of the cause, the Baileys, of the firm of Baileys & Chapman, should pay the debt of the plaintiffs as herein decreed, and upon the trial of the issues between them it can be fully determined how they stand, and to this end either of the said Chapman and Baileys, or the representatives of James M. Bailey, deceased, may file an amended bill in which such parties may raise proper issues between themselves, and as it appears from a decree rendered in this court in the case of George B. Schmitz's executors against James M. Bailey's executor, and James Brammer against the same that James M. Bailey's personal estate has been exhausted, and that John A. Douglass and James B. Peck have been by a decree in said cause appointed commissioners to sell the lands of James M. Bailey, which lands are subject to the judgment of the plaintiffs, as set out in the papers of this cause, it is adjudged, ordered and decreed, that the plaintiffs have leave to file their claim in that cause, and seek the payment of their debt out of the proceeds of the sale of the lands of James M. Bailey's estate, as to the extent of one half of the claim herein decreed for, and one half of the costs of this suit. And it appearing by the papers and proceedings in this cause, that William R. Bailey has aliened his lands since the rendition and recordation of the judgment of the plaintiffs set out in this cause, and that said lands are in the hands of Henry S. Calfee and Louisa, his wife, Nancy Bailey, Mary Bailey and Henderson Bailey, children and heirs-at-law of Philip P. Bailey, it is ordered, adjudged and decreed, that John A. Douglass, one of the commissioners of this court, proceed to sell so much of said lands as may be necessary to raise the one half of the sum herein required to be raised, including one half of the costs of this suit, and an attorney's fee of $30.00, to be taxed as a part of the costs. He shall sell on a credit of six, twelve and eighteen months, except for cash enough to pay the costs of suit and expenses of sale; he shall take from the purchaser bonds with approved security, and a lien is retained

on the land for the purchase-money. The commissioners shall give notice of the time, place and terms of sale by posting advertisements of the sale at three different places in Mercer county, one of which shall be the court-house door. Before receiving any money under this decree the commissioner shall execute and file with the papers of this cause a bond, with security to be approved by the clerk, in the penalty of $2,000.00, conditioned according to law. And it is further ordered, adjudged and deceed, that said commissioner shall after he shall have failed to raise the sums required to be raised by the sale of the lands of the Baileys proceed to sell so much of the land of the defendant, Chapman, as may be necessary to raise the residue unrealized by the sale of the lands of the Baileys. The said sale shall be under the like terms, notice and condition as is herein required for the sale of the land of the Baileys. And by consent of all parties, any party may take the deposition of William G. Payne. On motion of Elijah Bailey. executor of James M. Bailey, execution of this decree is suspended for sixty days, upon the said Bailey executing, with proper security and conditions, the bond reby the fourth section of the seventeenth chapter of the Acts of the Legislature, 1872—said bond in the penalty of $100.00."

The amended answer of A. A. Chapman referred to in said decree is as follows: "Your respondent would most respectfully represent that the plaintiffs, Kent, Payne & Co., had an account against the firm of Baileys & Chapman, of which your respondent was one, and in the month of December, 1857, they drew upon Baileys & Chapman an order in favor of Goddin & Apperson for $1,151.92, through the Bank of Virginia, at Union. Your respondent resided at Union, and the draft was presented to him as a member of the firm of Baileys & Chapman for acceptance or protest; and this respondent knowing that the firm aforesaid had purchased goods in Richmond, supposed, of course, that the account presented against the firm was correct, wrote the name of the firm across the back of said order, and upon which a judgment was subsequently obtained against the firm of Baileys & Chapman for the whole amount of same—your respondent not having heard that there was any error in the amount due from the firm of Baileys & Chapman, but your respondent has lately

learned, and has seen a statement from one of the firm of Kent, Payne & Co., that the amount due from the firm of Baileys & Chapman was not $1,151.92, but in truth $521.19, and that they added to the account a private debt of this respondent which amounted to $596.29, making the sum drawn for. This respondent would respectfully state that he never on his individual account purchased from the said Kent, Payne & Co. one dollar's worth of anything, and was not at the time owing them one cent, and that the draft thus drawn was a fraud upon the said Baileys & Chapman and upon this respondent; that no authority was given to put private or other claims against them in said draft, and the fact that such was done has only very lately been ascertained by this respondent, or he would have resisted the claim before a judgment was obtained. The whole proceeding, therefore, of the said Kent, Payne & Co. was a legal fraud at least, and such as it is properly the province of a court of equity to relieve against and correct. Your respondent, therefore, prays that this answer may also be considered in the nature of a cross-bill, and that the plaintiffs be required to show what individual account was due them from this respondent, if they had any account against——, by whom said account was made, upon what authority made, and why such account was made out against Baileys & Chapman; that your Honor will correct the judgment thus improperly procured against the said Baileys & Chapman, and reduce the same by the amount thus claimed to be due individually from A. A. Chapman; and that your Honor will do such other and further justice as equity and good conscience may require. And your respondent will ever pray, &c.    A. A. CHAPMAN."

On May 5, 1873, the commissioner made his third report, as follows:

### REPORT OF COMMISSIONER GOOCH.

"HON. E. WARD, *Judge of the Circuit Court of Mercer County:*

" At the September term, 1872, of the circuit court of Mercer county, a decree was rendered in the suit of Kent, Paine & Co., plaintiffs, against Baileys & Chapman, defendants, recommitting to the undersigned, a commissioner in this court, a report theretofore made by him in said suit requiring him again to report what amount is due on plaintiffs' judgment

from A. A. Chapmán, what amount from William R. Bailey, and what amount from the estate of James M. Bailey, deceased. In the report heretofore made in this suit by your commissioner the plaintiffs' judgment against the defendants for the sum of $1,324.20, rendered on a forfeited forthcoming bond, with interest thereon from December 12, 1859, and $4.13 costs, was assumed as the basis of calculation to ascertain the relative indebtedness of each of the defendants. From the testimony then filed before your commissioner and reported by him, the defendant, Chapman, was charged with two thirds of the amount and Baileys with one third. The reasons for thus dividing the judgment-liability of defendants are fully set forth in his former report, to which reference can be had. Since making said former report and since its recommittal, the deposition of William G. Paine, taken in the city of Richmond by the defendants, Baileys, has been filed as evidence before your commissioner; that evidence in connection with and in addition to the evidence heretofore taken and reported establishes, in the opinion of your commissioner, the fact, that the original debt, which was the cause of action, and upon which judgment was rendered in favor of plaintiffs, was composed of the individual debt of A. A. Chapman to plaintiffs, Kent, Paine & Co., and the debt of the mercantile firm of Baileys & Chapman to same parties. From the deposition of said W. G. Paine herewith filed, and to which reference is here made, it will be seen, that A. A. Chapman owed individually to Kent, Paine & Co. the sum of $496.29 as of date, December 12, 1857, and that said Baileys & Chapman owed as co-partners the sum of $521.19 as of date, June 1, 1856. These two amounts were, as it appears from the evidence, added together, and for the aggregate amount with interest on each added, a draft was drawn by Kent, Paine & Co. in favor of Goddin & Apperson on Baileys & Chapman, payable at the Bank of Virginia, at Union, Monroe county, which draft was accepted by Baileys & Chapman, and at maturity was protested for non-payment, and was the foundation of the suit of plaintiffs against defendants, and for which plaintiffs' judgment was rendered. From the evidence now before your commissioner he is induced to change his former statement and report and now submits a statement hereto attached mark-

ed 'SS,' in which A. A. Chapman is charged with the amount of his individual indebtedness to Kent, Paine & Co., as referred to in the deposition of William G. Paine, and his *pro rata* part of the costs incurred in the suit on the whole debt, and two thirds of the indebtedness of Baileys & Chapman, including interest and *pro rata* part of costs. By reference to said statement it will be seen, that the amount of plaintiffs' judgment-debt against defendants, Baileys & Chapman, calculated to March 1, 1873, is $2,378.12. Of this amount A. A. Chapman is charged with the sum of $1,999.36 as his proportion of plaintiffs' claim, and William R. Bailey with the sum of $189.53, and the estate of James M. Bailey, deceased, with the sum of $189.53, as the amounts due respectively from them. Your commissioner commenced the execution of the orders of said decree at his office in the town of Princeton on the 18th day of November, 1872, of which place and time the parties were duly notified, and was continued from day to day at the request of counsel for defendant, Chapman. The only evidence filed since the opening of the cause is the deposition of W. G. Paine before referred to. Statement 'SS' shows in full the amount of plaintiffs' judgment, as well as the manner, in which it is divided between the defendants.

" All of which is respectfully submitted,

" A. GOOCH, *Commissioner Circuit Court.*"

A. A. Chapman excepted to this report in part, because the depositions show a large indebtedness of the Baileys to Chapman, certainly to an amount greater than the entire amount of the plaintiffs' judgment, and because the commissioner refused to credit the plaintiffs' judgment with the amount received by collection by their attorneys, and which should have been, but was not, paid over to them. The commissioner in his report states fairly the evidence in the case.

The plaintiffs filed a replication to Chapman's answer, or, as it is called, an answer to his cross-bill. They state, that one of the Baileys purchased of them in Richmond goods, directing $521.00 of the bill to be charged to Baileys & Chapman and $596.00 of it to A. A. Chapman; and these two sums with interest made up their judgment. The goods charged to Chapman were shipped to him, and those charged to the firm of Bailey & Chapman were shipped to them, and

bills of the goods were forwarded, and no complaint was made. A draft was drawn for the consolidated amount and promptly accepted. All the parties knew then the whole transaction; and judgment was recovered against all of them without any objection.

The evidence tends strongly to prove, that this answer states the facts as they occurred.

On May 5th, 1874, the court entered the following decree.

"This cause —— on further to be heard the 5th day of May, 1874, upon the papers formerly read, upon the last amended answer and cross-bill of defendant, A. A. Chapman, and the answer and reply of plaintiffs, Kent, Paine & Co., to the said last answer and cross-bill of Chapman filed at the last term, upon depositions taken since the rendition of the last decree in this cause, and exceptions thereto, upon the report of sale made by Commissioner Douglass, and exceptions thereto, and upon argument of counsel. And the court being of opinion that the contest between the Baileys & Chapman ought not to delay the plaintiffs in the enforcement of their lien, and being of opinion that the defendants, Baileys & Chapman, have slept too long upon their rights, even if there was a mistake or error in the rendition of the judgment at law, to ascertain at this late day by the memory of witnesses the true facts, *will not now* entertain their complaint. And so much of the answer of defendant, A. A. Chapman, as is made a cross-bill is dismissed, and the relief therein prayed is denied. It is therefore adjudged, ordered and decreed, that the exceptions to the deposition be overruled. And as the report of the commissioner shows, that there is at least a heavy cloud over the title of the land bought by John W. Smith, and the said Smith objects to a confirmation of the report of sale, it is further ordered and decreed, that the said sale be set aside and the *down* payment therefor be refunded to the purchasers, and the purchase-bonds be surrendered by the commissioner to the purchaser. And no part of the money decreed to be raised by a former decree of this cause having been realized, and it appearing by the report of Commissioner A. Gooch in this cause, that there was due to the plaintiffs from the Baileys & Chapman on the 24th of August, 1872, the sum of ($2337.36-100) two thousend three hundred and thirty-seven dollars and

thirty-six cents, it is, therefore, adjudged, ordered and decreed, that the plaintiffs recover against the defendant, Augustus A. Chapman, the defendant, Wm. R. Bailey, and of Elijah Bailey, executor of James M. Bailey, deceased, to be levied of the assets in his hands, and against James D. Honaker and Isabella, his wife, George W. White and Alice, his wife, Gaston C. Bailey and Daniel M. Bailey, the last four being heirs-at-law of James M. Bailey, the defendant aforesaid, to be levied of the assets to them descended from their ancestor, James M. Bailey, the sum of eleven hundred and ninety-four dollars and ninety-seven cents, and interest thereon from the 24th day of August, 1872, until paid (the sum recovered in the last decree) from the same date, and interest on the sum of $1,142.39-100, the failure to decree interest on that sum in the last decree being an omission. And it being shown that James M. Bailey's personal estate has been exhausted, and that the defendants have nothing out of which the plaintiffs' debt can be made, except their lands, and it appearing from the report of Commissioner Gooch, that the defendant, Chapman, has land subject to the plaintiff's judgment, some of which is unincumbered, that unless the defendants shall pay to the plaintiffs the sums aforesaid within thirty days, it is, therefore, further adjudged, ordered and decreed, that then John A. Douglass and David E. Johnson, who are hereby appointed for the purpose, do sell so much of the unincumbered lands of the defendants as may be necessary to pay the amounts decreed to the plaintiff's in this cause, including the costs of this suit, including an attorney's fee of $30.00. Said lands shall be sold at the door of the court-house of Mercer county, on a credit of six and twelve months, except for the costs of the suit, which shall be on a credit until the first day of the next term of this court. The purchaser shall give bond and good security for the purchase-money, bearing interest from date, and a lien will be retained on the land as ultimate security. The commissioners shall advertise the time, place and terms of sale and description of the land to be sold for four consecutive weeks in the *Mountain Herald,* a newspaper published at Hinton, Summers county, there being no newspaper published in Mercer county, and post a notice of the said sale on the front door of the court-house of this county for the same period.

But before entering upon the discharge of their duties the said commissioners shall execute and file with the papers of this cause a bond in the penalty of $5,000.00-100, with security to be approved by the clerk, conditioned according to law. And this cause is retained as to all the incumbered land of the defendants, with liberty to the plaintiffs hereafter to file an amended bill as to the incumbered lands, if they shall fail to realize their debts out of the unincumbered lands or otherwise. And the plaintiffs have leave to file their decree in this cause in the chancery cause now pending in this Court wherein George B. Schmitz's executor and James Brammer are plaintiffs, and James M. Bailey's representatives & al. are defendants, and ask for such order therein as may be necessary to secure the money required to be raised by these decrees, and in executing this decree said commissioners are so to proceed that the former decree is to be carried out, except that the plaintiffs are not to be required to look to the land of Russell Bailey, referred to in said decree, as it appears that the same is incumbered, and the title thereto clouded; and the amount so directed to be recovered by plaintiffs of the defendants named therein is to be collected of the estate of James M. Bailey, deceased, provided there is no other unincumbered land of said Russell Bailey liable to plaintiff's judgment; and said decree of last term, as corrected by this as to interest, may be and is to be filed in the suit of Schmitz's executor and Brammer v. James M. Bailey's executors, and all pending in this court, for payment out of the funds arising out of the sale of the real estate of said James M. Bailey, deceased. And the commissioners before named shall sell so much of the unincumbered land of the defendant, Chapman, as will satisfy two thirds of the amount, principal, interest and costs of this decree; and for the other third of the amount decreed in favor of the plaintiffs, the same may be filed by the plaintiffs in the aforesaid suit of Schmitz's executor and Brammer against James M. Bailey's executors et al. for the payment out of the fund therein. And leave is reserved to the plaintiffs to apply for such other decree against any of the parties or their land as may be necessary for the payment of the decrees in this cause, or any part thereof. And it is further ordered, on motion of defendant, Chapman, that on this decree, as well as on

the decree heretofore rendered in this cause, the interest be abated from the 17th day of April, 1861, to the 6th day of August, 1866, to which the plaintiffs, by counsel, objected, but the court overruled the objection.

From the decrees of May 6th, 1873, and May 5th, 1874, an appeal and *supersedeas* has been allowed Elijah Bailey, the executor of James M. Bailey.

*David E. Johnston* for appellant relied upon the following authorities: Story Eq. § 682; Parson Part. 350 (s. p.); Story Eq. Plead. § 392; 11 W. Va. 342; 3 Rand. 434; Rob. (old) Pr. 397, note 2.

No appearance for appellee.

GREEN, JUDGE, announced the opinion of the Court:

The first point in controversy in this appeal is the amount due on the plaintiffs' judgment, which they have a right to enforce in this suit. The commissioner made his report of this amount, first by calculating it on the basis of the original judgment of the plaintiffs, afterwards he made a report on the basis of the judgment or award of execution on the forthcoming bond given by the parties. This latter was clearly right; and it was adopted by the court. On this basis the amount due the plaintiffs is $1,234.20 with interest thereon from December 12, 1859, until paid and $4.13 costs. Is this subject to any abatement or credit? Was it liable to be reduced by abating the interest during the war? This abatement the circuit court allowed by the last clause in the decree of May 5, 1874; but in making this abatement the court erred. The plaintiffs resided in Richmond, Virginia; the defendants in Mercer county. If these territories had been engaged in the war against each other, this interest ought to have been abated (*Mc Veigh* v. *The Bank of the Old Dominion*; *Brown* v. *Hiatts*, 15 Wallace 177); but these territories were not engaged on opposite sides in the war. It is true Mercer county was from the formation of this State within the bounderies of this State, and this State was engaged in the war on the opposite side to the goverument of Virginia at Richmond; but the jurisdiction of this State was never during the war extended over Mercer county, it re-

mained under the jurisdiction of the government of Virginia at Richmond. Of this fact this Court can take judicial notice. *Simmons* v. *Trumbo,* 9 W. Va. 358. Interest should therefore be allowed on the debt during the war, as was held to be right and actually done, where the parties resided in Greenbrier county, in the case of *Jarrett's adm'r* v. *Ludington,* 9 W. Va. 333.

It was contended, that the plaintiffs' judgment should be reduced to $521.19 with interest and costs, because there was improperly included in it by mistake or fraud a debt of $596.29, which was not a debt of the firm of Baileys & Chapman, against whom the judgment was rendered, but an individual debt of A. R. Chapman; and he filed an answer in the nature of a cross-bill asking this correction of the judgment. But the circuit court was of opinion as appears by the decree of May 5, 1874, that " Baileys & Chapman had slept too long upon their rights, even if there was a mistake or error in the rendition of the judgment at law, to ascertain at this late date by the memory of witnesses the true facts." It therefore refused to entertain this complaint and dismissed so much of the answer of A. A. Chapman, as was in the nature of a cross-bill, and denied the relief prayed for. The court not only did not err in this, but might well have added, that the evidence showed, that there was no mistake or fraud in the rendition of the judgment for the amount, for which it was rendered.

A credit was also claimed for an amount of money collected by the attorneys of the plaintiffs on certain claims of the defendants, which had been left with the clerk by one of the defendants with directions, to have writs issued on them for collection by suit, and with directions, that they were for the use of the plaintiffs, and that the names of the plaintiffs' attorneys should be marked to the suits. The evidence shows, that this was done without any previous agreement of these attorneys to receive these claims on the plaintiff's demand either as collateral security or in satisfaction *pro tanto* of their demand ; and the money, when collected, was by the direction of one the defendants applied to the payment of other demands against Baileys & Chapman. Attorneys at law employed to collect a debt may receive payment thereof in money, but

they have no authority to accept notes or bonds either in satisfaction or as collateral for the debt without express authority from their client. See *Wiley* v. *Mahood et al.*, 10 W. Va. 206. It is clear, that the court below did not err in refusing to allow this credit on the plaintiffs' judgment; for in this case there was not only no such authority, but they were not so received by the attorneys, though originally intended to be so applied by one of the defendants, and they were actually afterwards with the approbation of defendants applied to other demands against them.·

No other abatement or credit was claimed on the plaintiffs' judgment.

The next point in controversy is : Whose lands ought to be primarily responsible to satisfy the plaintiffs' judgment ? It is insisted by appellants' counsel, that it was the duty of the court in this cause to have had the partnership accounts of Baileys & Chapman settled, and if it should appear, that one of them, say Chapman, was on this settlement indebted to the others in an amount exceeding the judgment, that the court should have rendered a decree making the lands of Chapman first responsible· for the payment of the plaintiffs' judgment, and for the balance due from him the court should have rendered a decree in favor of the other defendants against Chapman. The case of *Vance* v. *Evans*, 11 W. Va. 342, is relied on to sustain this position. It was there decided, that a decree between co-defendants can only be based upon pleadings and proofs between the complainant and defendants; but where a case is made out between defendants by evidence arising by pleadings and proofs between complainant and defendants, a court of equity should render a decree between the co-defendants. The character, of the cases, which come within this rule, is well illustrated by the case of *Templeton* v. *Fauntelroy*, 3 Rand. 434, also relied on by appellants' counsel. It was there decided : " When a foreign attachment is sued out against an absent debtor and a resident garnishee in a case equitable in its nature, it is competent to the court of chancery to decree between the debtor and the garnishee, what may be due from the latter to the former after satisfying the claims of the plaintiff. But the evidence in such cases must arise from the pleadings and proofs between plaintiff and defendants."

What is meant by this qualification is shown by Judge Carr's opinion on page 442. If the garnishee had admitted, that he owed the non-resident more than enough to pay the plaintiff's demand, when it was established, the court would at once have decreed, that it be paid, and this is all it ought to have done, and if the non-resident defendant had asked the court to go further and settle the accounts between him and the garnishee in that cause, the court would have refused to grant such request, because in such a case there could properly be no decree rendered between co-defendants, because the claim of the non-resident to this balance could not in the case put depend on evidence, which arose from the pleadings and proofs between the plaintiffs and defendants. No evidence at all was necessary to sustain the right of the plaintiffs after his claim was established to the decree against the garnishee therefor, as the garnishee admitted his liability thereto, and this was all that was necessary to entitle the plaintiff to the relief he asked. But if the garnishee had made no such admission, but had only admitted, that there were unsettled accounts between him and the non-resident defendant, the court, in order to enquire into the right of the plaintiff to the relief he sought in the bill, would necessarily have had to settle the accounts between the garnishee and non-resident defendant; and if on such settlement the garnishee was found indebted to an amount exceeding the plaintiff's debt, this excess, the balance due to the non-resident defendant, would be decreed to him. In such a case the court would properly render a decree between co-defendants, because on the evidence necessarily brought into the cause, in order to enquire into the plaintiff's right to the relief he sought, it is proven, that this balance is due the non-resident defendant; and it having been necessarily and properly ascertained on the pleadings in the case between the plaintiff and defendants, the court should, to avoid further unnecessary litigation, decree that the balance due to the non-resident defendant should be paid by his co-defendant, the garnishee.

In the cause before us the plaintiffs were entitled to the relief they sought upon establishing their judgment and that of others against the defendants. They had then a right to subject the lands of all the defendants in their judgment to

its payment. It was a matter totally immaterial to their claim, which of the defendants in their judgment was liable on the settlement of their partnership-accounts to the other, so that the settlement of this partnership-account was in no manner necessary on the pleadings between the plaintiffs and defendants; and therefore the defendants in such a case are not entitled to any decree the one against the other, and these partnership-accounts ought not to be settled in this cause. But it does not from this follow, if on the facts admitted by the defendants the lands of some of them are primarily liable to the plaintiffs' judgment in whole or in part, that the court ought not to so declare and decree. Just as where the plaintiff has a lien on the lands of a principal and his surety, the court enforces the lien by the sale first of the principal's lands and then, if they be insufficient, by a sale of the surety's land.

In this case the articles of co-partnership, admitted by all the partners in the firm of Baileys & Chapman, render Chapman primarily liable for two thirds of the partnership-debts and the Baileys each for one sixth. It is true, that a settlement of the partnership-accounts might show, that Chapman had already paid two thirds of these debts; but such settlement cannot, for the reasons we have stated, be made in this suit; and *prima facie* he ought to pay two thirds of the plaintiffs' debt and all other debts against the firm. The court therefore without enquiring into the equities between the co-defendants ought to have decreed the lands of Chapman to be first sold to pay two thirds of the plaintiffs' debt, and the lands, which had belonged to each of the other partners and liable to this judgment-lien, should be sold, each to pay one sixth of the plaintiffs' debt; and if any of them should prove insufficient to pay their share, it should be made out of the lands of the other. The appellants claim, that as it is proven in the case, that more than half of the plaintiffs' judgment was based on a claim against A. A. Chapman alone, though the judgment was by agreement of parties rendered against all the members of the firm of Baileys & Chapman, the lands of Chapman ought to the extent of his individual debt included in this judgment to be for that reason held primarily liable for its payment.

On the other hand Chapman insists, that the evidence shows, that on their partnership transactions the other members of the partnership owe him much more than the amount of his individual debt included in the plaintiffs' judgment; and the court below evidently so thought. But it is obvious, that we must regard the plaintiffs' judgment as a debt due from the partnership, though out of it may arise an equity in the partners other than the one in the settlement of the partnership-accounts, to charge Chapman with his individual debt included in their judgment. But as the court for the reasons above stated properly declined to go into the settlement of this partnership-account in this cause, it was obviously its dnty to decline to take out this one item of the partnership-account, and say it *prima facie* made Chapman liable to his co-partners, and therefore it would charge his lands with a larger portion of the plaintiffs' claim, than it would otherwise be liable to. For like reason it was improper in the court, while declining to settle the partnership-accounts, to assume that the evidence, which had been adduced, probably would show, that the Baileys would be indebted to Chapman on such a settlement, and therefore their lands should be charged with a larger amount of the plaintiff's debt primarily, than they otherwise would have been.

With these equities between the co-defendants, the partners in the firm of Baileys & Chapman, the court in this cause had nothing to do. Chapman's lands should have been held liable primarily to two thirds of the whole of the plaintiffs' debt; and the lands of each of the other partners respectively should have been held liable primarily to one sixth of the whole of the plaintiffs' debt.

The whole of the decree of May, 1873, is therefore erroneous, excepting this portion of the same : " On this 6th day of May, 1873, this cause being called, the defendant, A. A. Chapman, tendered his amended answer herein, to the filing of which the plaintiffs by their counsel objected, and the court having overruled the objection permitted the same to be filed upon the condition, that the defendant would consent, that the plaintiffs may file their replication to said amended answer within sixty days, to operate as if filed of this day, and consent is given; and thereupon the plaintiffs demurred to

said amended answer of said A. A. Chapman so filed, and the defendant Chapman joined in the demurrer, and the same being argued the court doth overrule said demurrer." If there be error in this part of the decree, it is not prejudicial to the appellant, and it ought not to be reversed. The rest of the decree is erroneous and prejudicial to appellant and must be reversed. It assumes, that the court may properly decree defendants' land to be sold, before the amount of the plaintiffs' claim is ascertained; and it decides, that the lands of certain of the defendants are primarily liable in violation of the principle we have stated.

The decree of May 5th, 1874, is correct, so far as it dismisses so much of the answer of A. A. Chapman, as is in the nature of a cross-bill, and denies the relief therein prayed. So far as is shown by the record, that portion of the said decree, which sets aside the sale of land to John W. Smith and directs the cash payments made by him to be refunded, is not erroneous, and should be confirmed. The residue of the decree is very difficult to comprehend, and is complicated with the decree of May 6th, 1873, the principles of which, I presume, are intended to be carried out, and so far as I can comprehend, it does not fix the primary liabilities of the lands of the defendants to the plaintiffs' judgment in the manner we have indicated to be proper; and the final clause in this decree directs certain interest on the plaintiffs' claim to be abated, which, we have seen, is not proper.

For these reasons all of said decree except the portions, which, we have said, were not erroneous, should be reversed, and a proper decree shoud be entered by this Court; and the appellant should recover of the appellee, A. A. Chapman, his costs in this Court expended; and this cause should be remanded to the circuit court of Mercer, to be there proceeded in according to the principles laid down in this opinion, and further according to the principles governing courts of equity.

JUDGES HAYMOND AND JOHNSON CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.